Blalock vs. Waggoner.

BLALOCK vs. WAGGONER.

1. An extraordinary motion for a new trial, if made in vacation without a previous order granted in term, derives all its efficacy and standing from what is subsequently done respecting it in term time.

2. An extraordinary motion for a new trial to get the benefit of the statute of frauds touching a parol contract for the sale of land, where the verdict is with the substantial justice of the dispute, taking the evidence most strongly for the prevailing party, is not favored.

3. On a bill for specific performance of a parol contract for the sale of land, the vendee being complainant and the vendor defendant, it

Blalock *vs.* Waggoner.

appearing that the vendee bargained for the whole premises, consisting of one lot containing 202½ acres, at $2,000 cash, and thereupon contracted with a third person to let him take a certain part (86¼ acres) at $1,250, and the defendant when all three were present, agreed orally to make two conveyances, one to such third person for the part he wanted, the boundary of which the defendant had no share in fixing, and the other to the complainant for the residue of the lot, and received from each ten dollars, and shortly afterwards, the complainant paid over to defendant $1,240, money belonging to the third person, and took a conveyance to such third person for the part he was to have, and in a few days thereafter tendered the balance of the $2,000, to wit, $740, and demanded a conveyance for the residue of the lot, but the defendant refused to accept the money or make the deed:

*Held*, that the arrangement for the two deeds can well be treated as only a variation in the mode of executing the original contract, the payment of the money and the reception of the deed as part performance on the part of the vendee, and that possession under the deed, though taken and held by such third person, may be regarded as still further part performance in behalf of the original vendee, and these things, together with feeble possession and slight acts of ownership by him as to the residue of the lot, may suffice to take the case out of the statute of frauds as to such residue, more especially in adjudicating upon an extraordinary motion for a new trial where choice is to be made between abiding by a verdict apparently just and setting it aside on technical law.

November 21, 1888.

New trial. Practice in superior court. Statute of frauds. Specific performance. Contracts. Before Judge RICHARD H. CLARK. Clayton superior court. March term, 1888.

Reported in the decision.

HILLYER & BRO., for plaintiff in error.

HALL & HAMMOND and BIGBY & DORSEY, *contra.*

BLECKLEY, Chief Justice.

In this case, the motion for a new trial was an extraordinary motion, that is, it was made after the term of

the court at which the cause was tried. It was set on foot in vacation, but what was done prior to the next term was of no efficacy. See *Brinkley vs. Buchanan*, 55 *Ga.* 342; *Johnson vs. Jackson*, 60 *Ga.* 57. We treat the motion as deriving its standing in court, not from what was done at chambers, but from what was done subsequently in term by way of recognizing and retaining it for hearing. Giving it this support by liberal construction and intendment, it is still an extraordinary motion. *Railroad vs. Whitlock*, 75 *Ga.* 77. An extraordinary motion for a new trial, where the principal question affecting the main case is whether the movant is not protected by the statute of frauds against complying with his parol contract for the sale and conveyance of land, is entitled to but little favor. The evidence, and all the elements of fact, are to be taken most strongly in support of the verdict. So taking them in this instance we are satisfied that substantial justice was done by the jury, whether, in technical law, the statute of frauds was with Blalock, the losing party below and the plaintiff in error here, or not. In so far as his own testimony and that of his witnesses suggested a state of facts at variance with that which Waggoner's testimony went to establish, the conflict now counts for nothing, the jury having indorsed Waggoner's version and thereby silenced everything adverse thereto. In reciting such of the facts as we think proper to mention, we shall not only adopt Waggoner's version, but consider it as including all the inferences which the jury could rightfully deduce from it, and from the circumstances of the whole case.

Blalock, by parol agreement, contracted with Waggoner to sell him a certain lot of land, identified by number and district, containing 202½ acres, for $2,000, cash. It was understood that Waggoner was probably unable to furnish all the money, and that he would

wish to dispose of some of the land to a sub-purchaser and thereby obtain the means to make payment in full. This was assented to by Blalock, he expressing a willingness to execute one conveyance or more than one, as Waggoner might desire. Waggoner procured Morris to take 86¼ acres of the tract, agreeing with him on the boundary, and to pay therefor $1,250 of the purchase money. Some days thereafter, Blalock and Waggoner being together on or near the premises, Blalock informed his tenants, in Waggoner's presence, that he had sold out to Waggoner, and that they could not have the land for cultivation as he, Blalock, had intended. He also, in Waggoner's presence, informed some road commissioners who were about to lay off a road over the land, that he did not care where they located the road, that he had sold to Waggoner, and that they might consult Waggoner as to locating the road, which they did. He said to Waggoner, at the same time, that as he had sold him the land, he might locate the road where he pleased, and Waggoner accordingly took direction of the matter and had the road graded to suit himself. On the same day Blalock, Waggoner and Morris conferred together, and Blalock ascertained from them how much Morris had agreed to pay, and how much of the land he wanted, and that the boundary between them had been fixed by Morris and Waggoner. Blalock consented to the arrangement, and each of them paid him ten dollars, the interview ending with an agreement that they would call upon him the following Monday, pay him the balance, and that he would then execute each of them a deed. Waggoner, considering himself in possession under the contract, besides giving direction as to the road and having it graded as he wished, exercised some slight acts of ownership, such as putting up a fence, etc. He

understood that his possession was with Blalock's consent, and with his express permission, as shown by the transaction in regard to the road, etc.   Not waiting till Monday, he went to see Blalock on Saturday to procure the deeds.   He had previously furnished Blalock with a memorandum of the boundary agreed upon by himself and Morris; this Blalock had lost, and he now informed him again as to the boundary, paid him $1,250, money which he had obtained from Morris, and Blalock executed a deed to Morris, but it was agreed that payment of the balance of the money and the execution of a deed to Waggoner for the residue of the lot should be postponed till Monday.   Waggoner carried the deed which he had obtained for Morris to Morris, delivered it to him, and it is inferable that he or his heirs (for he died shortly afterwards) took and held possession under it, as nothing to the contrary is suggested in the record.   On Monday Waggoner again called upon Blalock, according to previous appointment, tendered him the balance of the money ($740.00), which he declined to accept, and refused to make the other deed.   Further negotiations ensued on subsequent days, the tender and refusal were repeated, and Blalock having tendered back the ten dollars remaining in his hands in excess of the amount which Morris was to advance on the purchase money, and Waggoner having refused to receive it, the split between the parties became complete.

In a short time both of the parties turned their attention to the possession of that part of the lot not conveyed to Morris.   Waggoner took measures to put a tenant into one of the houses.   Blalock appeared suddenly on the scene and for a few hours prevented occupation.   Waggoner, however, in company with his son, came forward. perhaps in the night, and prevailed upon

Blalock, much against his will, to yield the contest for possession, and the possession remained with Waggoner. He still holds it.

Matters stood thus when the present bill was filed for a specific performance of the parol contract, the purpose being, of course, to coerce performance only as to that part of the original tract not embraced in the conveyance to Morris. According to the evidence, the value of this part is $1,200 ; so that the gain to Blalock and the loss to Waggoner by non-performance would be $450.00. The answer does not resist performance because of inadequacy of price. It contends that in the outcome of the negotiations there was no contract to sell the whole lot to Waggoner, but that there were two distinct and independent contracts, one with Morris to sell him the part conveyed to him, at $1,250, and the other with Waggoner to sell him the balance of the tract at $750. It also contends, as to the latter, that time was of the essence, and that no tender was made until after the time had elapsed, and therefore, that refusal to convey was justified. Upon both these defences the verdict puts a decisive negative, and nothing is left but the statute of frauds.

Touching the element of possession, it may be that excluding the result of the final scramble for possession, which according to all the authorities counts for nothing, the possession by Waggoner himself was too feeble, and not sufficiently notorious and exclusive, standing alone, to serve as a basis of specific performance. We will not decide whether it was or not. But adding it to the part performance on the Morris branch of the contract, we have little doubt that their combined effect would satisfy the statute. As Morris obtained the title, and as possession follows title where there is no adverse possession, we think the jury could infer,

though there was no express evidence to that effect, that Morris entered into possession, and if he did, it was equivalent to the like act by Waggoner. If all that Morris did was the direct result of the original parol contract between Blalock and Waggoner, his performance was Waggoner's performance, and the effect was the same as if Waggoner, instead of Morris, had taken the deed which Blalock made to Morris. And if he had taken it, and entered into possession of only that part of the tract, with a stipulation that the balance of the parol contract was to be executed at a future day, we rather think, he could have specific performance of such balance. Compare Smith *vs.* Underdonck, 1 Sanf. Ch. R. 579; Jones *vs.* Pease, 21 Wis. 653; Glass *vs.* Hulbert, 102 Mass. 24; Allen's estate, 1 Watts & S. 383. It is to be noted, in consulting these authorities, that the present is not a sale of two distinct lots or parcels of land, but of one lot only.

Certain it is, we think, that if Waggoner had refused to comply and take the residue of the land, supposing this residue to have been worth less by $450 than the unpaid balance of the purchase money, Blalock could have compelled him to go on and specifically perform. If he could, why may not Waggoner, with a similar state of facts favorable to his interest, do the like? Generally, the right to specific performance is mutual; when one party could compel, if he so desired, so can the other. *Jackens vs. Nicolson,* 70 *Ga.* 198.

What we have said is enough to dispose properly of this extraordinary motion for a new trial, and there would be no profit in scrutinizing in detail the several grounds of the motion, especially as some of them are qualified and explained by the note of verification so as to make us hesitate to deal with them as absolutely correct.

Judgment affirmed.