## Ex parte CHIN LOY YOU.

### (District Court, D. Massachusetts. Feb. 16, 1915.)

### No. 1022.

1. ALIENS ☞32—DEPORTATION—PROCEDURE.

   The hearing before the Secretary of Labor for the deportation of an alien unlawfully within the United States is summary and administrative, not judicial, and need not be conducted according to the procedure and rules of evidence followed in courts of law, if there is an honest effort to ascertain the truth by methods sufficiently fair and reasonable to amount to due process of law.

   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

2. ALIENS ☞32—DEPORTATION—PROCEDURE—RESIDENT.

   A Chinese duly admitted into the country is prima facie a legal resident, but is nevertheless subject to deportation on administrative process.

   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec Dig. ☞32.]

3. ALIENS ☞32—DEPORTATION—PROCEDURE—REVIEW BY COURTS.

   The courts have the right to scrutinize freely the fairness of administrative proceedings for the deportation of an alien.

   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

4. ALIENS ☞32—DEPORTATION—EVIDENCE—FAIRNESS OF PROCEEDINGS.

   On habeas corpus by a Chinese, who was ordered to be deported as an alien unlawfully within the country, evidence *held* to show that the alien was not given a fair hearing, though he was afforded an opportunity to produce evidence and appear by counsel before the Secretary of Labor.

   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

5. ALIENS ☞32—DEPORTATION—PROCEDURE—RIGHT TO COUNSEL.

   While the right to appear by counsel in criminal proceedings, given by Const. U. S. Amend. 6, does not apply to proceedings for the deportation of an alien, the refusal of a request by counsel to appear for the alien places on the immigration officials the burden of explaining such refusal, and of showing the fairness of the proceedings.

   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

6. ALIENS ☞32—DEPORTATION—PROCEDURE—EVIDENCE.

   While immigration officials are entitled to make their own rules of evidence for hearings in proceedings for the deportation of aliens, there are certain fundamental principles which they cannot disregard, consistently with fair treatment to the aliens.

   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

Habeas corpus proceeding by Chin Loy You to secure a discharge from custody on a warrant for deportation as an alien unlawfully

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

within the United States. On hearing on the agreed statement of facts. Petitioner found not to have had a fair hearing before the immigration authorities, and final action in habeas corpus proceeding delayed for 30 days to afford opportunity to give the petitioner such hearing.

Phelan & Conway, of Boston, Mass., for petitioner.

William C. Matthews, Sp. Asst. U. S. Atty., of Boston, Mass., for respondent.

MORTON, District Judge. Habeas corpus to the immigration commissioner at Boston. The writ issued; the alien, Chin Loy You, who will be referred to as the petitioner, was delivered by the immigration commissioner to the United States marshal; the question is whether he is entitled to be discharged from custody. The case was heard before me upon an "agreed statement of facts," which incorporates by reference the record of the proceedings against the petitioner by the immigration officials upon which deportation was ordered by Acting Secretary Densmore by whom, it is agreed, the actual decision was made. Although the prisoner is a Chinese, born in China, the deportation proceedings were admittedly not based upon the Chinese Exclusion Acts, but upon the Immigration Act of 1907 (Act Feb. 20, 1907, c. 1134, § 21, 34 Stat. 905 [Comp. St. 1913, § 4270]); the general charge being that the prisoner was an alien "unlawfully within the United States." (Secretary's warrant of January 15, 1914). The reference in that warrant to the act of February 20, 1907, as "the Chinese Exclusion Laws" is evidently a mistake.

The case is somewhat unusual, in that the alien was duly admitted into this country on his arrival here. Under such circumstances, the matter goes directly to the Secretary of Labor. Sections 20 and 21 (Comp. St. 1913, §§ 4269, 4270). The practice is that, upon a representation being made to the Immigration Bureau that a certain person is an alien unlawfully in this country, a warrant for his arrest is issued in the name of the Secretary of Labor. The warrant in this case contained directions that the immigration commissioner and inspectors to whom it was addressed should grant the alleged alien "a hearing to enable him to show cause why he should not be deported." Those officers apparently considered that their duty under the warrant was only to examine the alien, to procure such other testimony, statements, and evidence as in their opinion supported the complaint against the prisoner, to offer him an opportunity to introduce evidence in his own behalf, and to make up a record to be sent to the Secretary, with their recommendation, for his decision thereon. Nothing which would ordinarily be termed a "hearing" was accorded the alien by them. The only hearing was before the Acting Secretary, and was upon the record forwarded by the inspectors to Washington. The decision was against the petitioner, and a second warrant issued, dated March 28, 1914, directing deportation, under which he was held when these proceedings were instituted.

[1-3] The principles of law applicable to the case are well settled. Broadly speaking, the question is whether the alien has been accorded

a fair hearing by the immigration authorities. Such hearing may be, and usually is, summary and administrative, rather than judicial, in character, and need not be conducted in accordance with the procedure and rules of evidence followed in courts of law. The essential thing is that there shall have been an honest effort to arrive at the truth by methods sufficiently fair and reasonable to amount to due process of law. Chin Yow v. U. S., 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; Bouve on Aliens (1st Ed.) 513. Although the petitioner was, prima facie at least, a legal resident of this country at the time of his arrest, he is none the less, under the decision in Pearson v. Williams, 202 U. S. 281, 26 Sup. Ct. 608, 50 L. Ed. 1029, subject to deportation upon administrative process, without any judicial trial. There is, however, a tendency in the decisions of the Supreme Court on this subject to safeguard the individual against the tremendous and arbitrary power given to the Immigration Bureau by reserving to the courts the right to scrutinize with some freedom the fairness of the proceedings. In the Tang Tun Case, 223 U. S. 673, 32 Sup. Ct. 359, 56 L. Ed. 606, careful consideration was given to the evidence upon which the Immigration Department acted, and it was held to have been fairly taken and to be legally sufficient. See, too, Liu Hop Fong v. U. S., 209 U. S. 453, 28 Sup. Ct. 576, 52 L. Ed. 888.

[4] It appears that Chin Loy You arrived in this country on October 14, 1912, at San Francisco. He there applied for admission as the minor son of one Chin Yit Bak, a legally domiciled Chinese merchant engaged in business in San Francisco, and, on November 7, 1912, after a hearing upon that question before the immigration authorities at San Francisco, was duly admitted upon that ground. A certificate of identity, with his photograph annexed, was issued to him. He stayed with his alleged father about two months, and then came east to Nanticoke, Pa. From there he went to Hop Lee's laundry in Gettysburg. He was found at that place on or about September 20, 1913, by one Mallett, a United States inspector, who took from him his certificate of identity. Shortly afterward the petitioner left Gettysburg and came to Boston, where he resided until taken into custody in the deportation proceedings.

Before proceedings were instituted against this petitioner, a question had arisen in Pennsylvania concerning the status of a Chinese person there, named Dan Horn. During that trial Hop Lee was called as a witness, and after a threat by the United States officers to accuse him of crime if he did not tell the truth, and a promise to him by them of immunity from prosecution if he did tell the truth (Mallett's statement), testified, among other things, that this alien, Chin Loy You, was not the son of Chin Yit Bak; that he had been employed as a laundryman by Hop Lee (a laundryman is not in the merchant class); that the firm in San Francisco of which Chin Yit Bak was a member was engaged in the illegal importation of Chinese boys; and that this alien had been so illegally imported and was the son of a Chinese laundryman in San Francisco (and not therefore entitled to admission). "This alien was not a party to any of the proceedings at which said testimony was given, nor was he present when any of the said statements were

made, and no counsel or other person was present representing him." Agreed Facts, p. 3. Hop Lee was not called as a witness in these proceedings. Nevertheless a transcript of Hop Lee's evidence as aforesaid was incorporated into the record against the petitioner, and "was treated and considered as competent evidence in determining the issues against this alien." Agreed Facts, p. 3.

On the strength of this evidence in the Horn Case, a warrant issued for the apprehension of Chin Loy You; and he was arrested in Boston shortly afterwards. His counsel was with him at the time of the arrest and was shown the Hop Lee evidence. He then and there demanded of the immigration officers the right to confer with his client, and to be present at all examinations and hearings of the alien, and of any witnesses that might testify. His demands were refused. Immediately following the petitioner's arrest, neither his counsel nor, so far as appears, any of his friends were permitted by the immigration officers to communicate with him, until after the so-called "hearing" before them had been concluded. The officers proceeded with the "hearing," excluding the petitioner's counsel therefrom, and examined the alien at length. A transcript of the testimony so obtained was incorporated into the record and was considered in making the decision.

After the testimony of the alien had been taken in the manner above described, the "statements" of certain persons were taken in the state of Pennsylvania by Inspector Mallett for use in the proceedings against the petitioner. Neither the petitioner nor his counsel was notified of, or knew of, the taking of these "statements"; neither was present when any of them were taken; no opportunity was afforded the petitioner or his counsel to cross-examine, or even to see, the witnesses. The "statements" were added to the "record" and were used against the prisoner.

Certain letters written in Chinese characters were discovered in the possession of one Chin Chak Goon. By whom they were written did not appear. They were not addressed to Chin Loy You, and they were not written by him, nor by any person on his behalf. Agreed Facts, p. 5. He was referred to in the letters, but had no connection with them. They "were incorporated into the record," and "were considered and treated by the Secretary of Labor, together with all the other evidence, as material and competent evidence against the alien." Agreed Facts, p. 5.

After the first examination or "hearing" of the alien had been completed by the inspectors, and after the "statements" taken in Pennsylvania, and the letters referred to, had been added to the record as above stated, the alien was again brought before the inspectors in camera, without the presence of his counsel, and was further examined. This testimony was incorporated into the record and used against him.

The record submitted to the Secretary also contained what purported to be reports by one Mallett, a United States inspector. These reports are of an extraordinary and highly prejudicial character. See Mallett report of March 3, 1914; his comment on Chin Chak Goon testimony; his report of February 26, 1914. They are not confined to comment on what the record discloses, or to recommendations based

upon the record, but state other facts, as to many of which Mallett plainly had no personal knowledge. Mallett never appeared as a witness, and never was sworn; and no opportunity was given to cross-examine him. See, too, the Rodgers report of March 2, 1914.

While the warrant alleges that the petitioner is likely to become a public charge, no evidence was introduced on that issue, and it was not relied upon at all by the Department in making its decision, which was based solely upon the ground that the petitioner had fraudulently obtained admission into the United States. Acting Commissioner General's Summary and Recommendation of March 27, 1914.

After the second examination of the alien, the government's case against him seems to have been regarded as complete. He was told by the inspectors that he might thereafter be represented by counsel. His counsel was shown the record which had been made against the alien and was furnished with a copy of at least part of it. The counsel for the alien offered no evidence, but submitted a brief and appeared personally before the Acting Secretary, where he objected to the course which had been followed. The Acting Secretary disregarded the objections and directed the defendant's deportation, basing his decision upon "all the evidence" in the record (Agreed Facts, p. 6); and the question is whether the proceedings amount to fair treatment of the prisoner. The contention of the respondent is that the proceedings were fair because, after the government's case was completed, an opportunity was afforded the alien to present evidence in his behalf, and his counsel was heard by the Acting Secretary. This, it is said, was all that the prisoner was entitled to.

It is apparent that many of what we are accustomed to regard as the essential safeguards of individual liberty were ignored. The prisoner was not allowed to see any of the witnesses against him while they were testifying, nor to cross-examine them; and he had no power to make them testify afterwards. All the oral testimony against the prisoner (except his own) was taken behind his back, and, if not secretly, at least without notice to him or to his counsel, although the latter was well known to the officers and had seasonably demanded the right to be present at the taking of the testimony and to cross-examine the witnesses. The petitioner was denied the assistance of counsel both before, and while giving his testimony at, the first so-called "hearing" before the officers, and also at the second "hearing." Statements of fact not under oath, made by persons not connected with the prisoner or with the Immigration Department, and never present at any hearing, were used against him.

The proceedings plainly were not of a judicial character. They cannot be supported, it seems to me, as legitimate administrative proceedings, because the officers did not endeavor themselves to ascertain the truth about the matter. Tang Tun v. Edsell, supra; U. S. v. Sprung, 187 Fed. 903, 907, 110 C. C. A. 37 (dissenting opinion by Pritchard, J.); Bouve on Aliens, p. 518. They evidently became convinced that in investigating Hop Lee's laundry they had stumbled upon an organized and far-reaching plot to enter Chinamen fraudulently into the United States. They believed that this petitioner was among the

persons whose admission had been so procured. They thereupon instituted proceedings against him and endeavored by every legal means in their power to secure his deportation. They did not act in bad faith; I do not doubt that they honestly believed the prisoner to be unlawfully here. I think, however, that the immigration records show that they were endeavoring to make out a case, rather than to act in a fair or judicial manner toward the alien. I see no other explanation of their refusal to allow him the assistance of counsel, their omission to notify his counsel of the taking of the testimony in Pennsylvania, their uncritical acceptance and use of the testimony of Hop Lee, taken in proceedings to which this prisoner was not a party, and under circumstances which, as these experienced officers must have known, rendered it of little or no value, the extremely partisan character of the Mallett and Rodgers reports, and also, perhaps, the lack of any proper effort to obtain for these proceedings information from the San Francisco officers concerning the admission there and the testimony of the witnesses on which the petitioner was admitted, though this was to some extent done in a different proceeding, the record of which was submitted to the Secretary, and it may have been the duty of the petitioner to get more complete evidence from San Francisco, if necessary for his case.

Why were the ordinary safeguards against injustice refused or ignored? Why was no notice given to the petitioner's counsel that the testimony of the Pennsylvania witnesses was to be taken? Why was Hop Lee not examined in the proceedings against this petitioner and offered for cross-examination? Why was the petitioner denied the right of counsel before the first hearing, and at any "hearing," until the government's case against him had been completed? These seem to me to be vital questions in considering the fairness of the proceedings; and no answers to them have been suggested by the respondent, except that the officers were not legally obliged to do more than they did, which is the attitude of a prosecutor, rather than of a judge, or of a fair administrative officer, in a case like the present.

[5] It is true that the right to counsel secured by the Constitution (Amendment 6, § 1) relates only to criminal prosecutions; but it is equally true that that provision was inserted in the Constitution because the assistance of counsel was recognized as essential to any fair trial of a case against a prisoner. See, too, Amendment 14. To make the defendant's substantial rights in a matter involving personal liberty depend on whether the proceeding be called "criminal" or "civil" seems to me unsound. Indeed, historically the right to counsel in civil cases and upon charges of misdemeanors antedates such right in cases of felony and treason. Cooley, Constitutional Limitations, p. 475. "The presence, advice, and assistance of counsel" is said by Story to be necessarily included in "due process of law." Story on the Constitution, p. 668. Without undertaking to say that a prisoner has an absolute right to counsel before administrative boards, not composed of lawyers, or that the denial of counsel would in every case prevent such proceedings from being fair, I am of opinion that, under such circumstances as are disclosed in this case, where counsel for a prisoner seasonably

requests the privilege of conferring with him before the trial and of being present during the taking of the evidence, the refusal of that request puts upon the official so acting a great burden of explanation and of scrupulous regard for the prisoner's rights which in this case is not met. Ex parte Lam Pui (D. C.) 217 Fed. 456.

[6] And while it is true that the administrative boards are, generally speaking, entitled to make their own rules of evidence, and to consider any evidence which to their minds is of probative value, there are, nevertheless, certain fundamental principles which can hardly be disregarded, consistently with fair treatment to the prisoner, and which were not observed in this instance. Moreover, he had had a trial in San Francisco, which had resulted in his favor. He was poor, and was under great difficulty in retrying that issue at a point 3,000 miles away. This seems to me one more circumstance which called upon the officers to be scrupulously careful and fair in their investigation.

It does not seem to me that the opportunity here given to present evidence and to argue the case rendered the proceedings fair, or in accordance with due process of law. They are to be viewed as a whole, and, so viewed, they present, to my mind, a plain violation of the fundamental principles of fair play by the immigration inspectors. I find and rule that the proceedings before them were substantially—and on account of their mistaken attitude towards the matter I think intentionally—unfair to the alien. The Acting Secretary, instead of disaffirming the illegal conduct of his subordinates, approved it and based his decision on it. In this case the petitioner belongs to a race little favored by our law. But it has been held that immigration tribunals have authority to determine finally, with no appeal to the law courts or to a jury, questions of citizenship; and the next case of this character may be one of an American citizen endeavoring to protect himself against exile by administrative order made in this way. U. S. v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; Tang Tun Case, supra.

Without considering the other points urged on behalf of the petitioner, I am of opinion that he had not a fair hearing before the immigration authorities. In accordance with the practice established in this circuit in the Petkos Case, 214 Fed. 978, 131 C. C. A. 274, final action will be delayed 30 days in order to afford an opportunity to the immigration authorities to give the petitioner a fair hearing in the meantime.