## DOWNER v. DUNAWAY.

No. 6286.

Circuit Court of Appeals, Fifth Circuit.

Nov. 20, 1931.

Rehearing Denied Dec. 18, 1931.

WALKER, Circuit Judge, dissenting.

Harry S. Strozier, of Macon, Ga., and W. A. Sutherland, A. T. Walden, and Granger Hansell, all of Atlanta, Ga., for appellant.

T. R. Gress, of Atlanta, Ga., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal from an order denying a petition for the writ of habeas corpus. It is here upon a certificate of the district judge that in his opinion probable cause was shown for its allowance. 28 USCA § 466. The petition was filed on June 13, 1931, and the order appealed from was made on the same day, without the issuance of the writ or an order to show cause why it should not be granted. The appeal is therefore to be disposed of upon the material averments of fact contained in the petition which in substance are these: Appellant Downer was in the custody of appellee Dunaway, as superintendent of the Georgia State Penitentiary, under sentence that he be electrocuted on June 15, 1931, two days later. That sentence was imposed upon appellant by the superior court of Elbert county, Ga., upon a verdict that found him guilty of the crime of rape. On May 17, 1931, so it is supposed, that crime was committed upon a white woman near the city or town of Elberton in Elbert county. Appellant is a negro man. On the 18th four negroes other than appellant were arrested and held in jail as suspects, and on that day a mob of from 1,000 to 1,500 people surrounded the jail. Early on the 19th the mob had become so threatening that the officers placed those negroes in automobiles and rushed them away to Athens to prevent them from being lynched. The mob became so enraged at this action that it pursued the officers and fired a number of shots into the automobiles carrying them and their prisoners. On the 19th appellant and another negro named McCalla were also arrested and placed in jail at Elberton. A mob again gathered at the jail, overrunning the square in front of it and the courthouse, forced its way into the sheriff's quarters on the ground floor and up the stairs to the floor on which the jail was located, and attempted to break down the door leading into the cell where McCalla and appellant were imprisoned. By that time the Governor had ordered out the local National Guard troops, and they immediately gathered at the jail and began attempting to dispel the mob. As soon as it became dark the mob increased to not less than 1,500 people, constantly threatened to break into the jail and lynch appellant and McCalla, and members of it did actually break into the sheriff's quarters and force their way up the stairs leading to the jail, where they were stopped by the firing of a machine gun. One member of the mob was injured and threats were made against the lives of the National Guardsmen who were manning the machine gun. For more than six hours the mob stormed and threatened, fired shots into the jail, smashed windows, threw dynamite, and threatened to blow up the jail. The arrival of more troops made it possible for appellant and McCalla, disguised in National Guard uniforms, to be secretly placed in automobiles and taken to the Fulton county jail in Atlanta. On the 25th a special term of court was convened solely for the purpose of indicting and of trying the person alleged in the indictment to be guilty of the crime for which appellant was being held. A grand jury was immediately organized and on that day found an indictment against appellant for the rape. On the 26th he was tried, convicted as charged in the indictment, and sentenced to death. The trial began at 10 o'clock in the morning; the verdict was rendered at 10 o'clock that night, after the jury had been out about five minutes. The court at once pronounced sentence, and appellant was immediately taken charge of by troops and returned to the jail in Atlanta. Appellant had no funds with which to employ counsel, and first met counsel appointed by the court about an hour before the trial. He had no opportunity after the trial to consult with his counsel before the adjournment of court, which occurred on the 27th at noon. No motion was made for a continuance, or change

of venue, although during the trial a large and unruly crowd of people congregated in the courthouse square. No motion for a new trial was made by appellant's counsel before adjournment or afterward. During the trial two hundred officers and men of the National Guard attempted to keep order. If it had not been for their presence in and about the courtroom, it would have been impossible to hold the trial, and appellant would have been lynched. If he had been acquitted he would not have been permitted by the mob to leave the courtroom without the protection of the troops. The same spirit of mob violence obtained from the date of the commission of the crime until after the trial. During that time a number of negroes had been beaten without provocation by white men. Counsel was prevented from moving for a continuance, for a change of venue, or for a new trial by the fear of mob violence. Finally, the petition alleges that appellant was innocent of the crime of which he was convicted.

The leading cases in the Supreme Court on the question whether there is due process of law in the trial of a criminal case in the presence of or under the influence of actual or threatened mob violence are Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, 586, 59 L. Ed. 969, and Moore v. Dempsey, 261 U. S. 86, 43 S. Ct. 265, 266, 67 L. Ed. 543. In the first of these cases it is said that "a hearing, or an opportunity to be heard, before a court of competent jurisdiction, according to established modes of procedure, is 'due process' in the constitutional sense." And again: "We, of course, agree that if a trial is in fact dominated by a mob, so that the jury is intimidated and the trial judge yields, and so that there is an actual interference with the course of justice, there is, in that court, a departure from due process of law in the proper sense of that term. And if the state, supplying no corrective process, carries into execution a judgment of death or imprisonment based upon a verdict thus produced by mob domination, the state deprives the accused of his life or liberty without due process of law." And in Moore v. Dempsey, supra, it is said: "But if the case is that the whole proceeding is a mask—that counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Courts failed to correct the wrong, neither perfection in the machinery for correction nor the possibility that the trial court and counsel saw no other way of avoiding an immediate outbreak of the mob can prevent this Court from securing to the petitioners their constitutional rights." In Dunn v. Lyons, 23 F.(2d) 14, 15, this court, after considering the two cases above cited, held "that a writ of habeas corpus will not lie where the state supplies and its courts make available process adequate to correct errors committed during the trial of a case." In Ashe v. United States, 270 U. S. 424, 46 S. Ct. 333, 334, 70 L. Ed. 662, it was held that the regular administration of the criminal law of a state can only be attacked collaterally in habeas corpus proceedings in "extraordinary cases where there is only the form of a court under the domination of a mob."

The petition in this case follows closely the petition in the Moore v. Dempsey Case, and makes an equally good showing for the issuance of the writ of habeas corpus. While there can be no doubt that the state of Georgia provides ample means for correcting the errors of a trial court, according to the petition the corrective process was not made available to appellant by the state trial court. Counsel who represented appellant may have construed their appointment as covering only the actual trial, such as impaneling the jury, examining and cross-examining the witnesses, and making arguments in the case; and not as including the making of motions for continuance, change of venue, and a new trial. If so, the construction they placed upon their appointment is too narrow to be countenanced, and cannot be attributed to appellant who had no choice in the selection of his counsel. It goes without saying that an accused who is unable by reason of poverty to employ counsel is entitled to be defended in all his rights as fully and to the same extent as is an accused who is able to employ his own counsel to represent him. The trial judge is given authority by law to change the venue of the trial of a criminal case of his own motion and without petition whenever in his judgment the accused is in danger of being lynched or violently dealt with in the county where the crime was committed. Georgia Penal Code, § 964. Under the circumstances disclosed it was the duty of counsel to seek to have the case continued, or the venue changed, or the conviction set aside; and it was equally the duty of the trial court to refuse to put the accused to trial in the presence of a mob whose violence against him was prevented only by the attendance of troops. A fair opportunity should have been afforded

for the presentation of a motion for a new trial before adjournment of the term.

A trial conducted as this one is alleged to have been cannot be other than void. But it is argued in behalf of appellee that appellant had not exhausted his remedy in the state courts, because it is said the way was open both before the filing of his petition and since to file an extraordinary motion for a new trial in the trial court, and upon denial of it to appeal to the Supreme Court of Georgia. We are of opinion that appellant's rights must be determined as of the date of his petition, as in view of the fact that he would have been executed two days later he could not have applied to the trial court at a regular term, because none was to be held until after the date set for his execution, Georgia Laws 1929, page 1544, and he could not have based an appeal upon the incorrectness of the verdict in the absence of a motion for a new trial. Holsey v. Porter, 105 Ga. 837, 31 S. E. 784. It is provided by statute that all applications for a new trial, except in extraordinary cases, must be made during the term at which the trial was had. Georgia Penal Code, § 1090. The extraordinary motions for a new trial provided for by this statute are not defined by it, but the Supreme Court of Georgia has held them to be "such as do not ordinarily occur in the transaction of human affairs, as when a man has been convicted of murder, and it afterwards turns out that the man he was charged with having killed is still alive, or where a man has been convicted on the testimony of a witness who is afterwards found guilty of perjury in giving that testimony, or from some providential cause, and cases of like character." Cox v. Hillyer, 65 Ga. 57. To the same effect are Harris v. Roan, 119 Ga. 379, 46 S. E. 433; Wheeler v. State, 149 Ga. 473, 100 S. E. 568. An extraordinary motion for a new trial cannot be made to take the place of an ordinary motion therefor, or to excuse the lack of due diligence in applying for a new trial during the term at which the trial was held. Cox v. Hillyer, supra. However, we think that the case presented by petition is so unusual as that the conviction could properly be reviewed upon such extraordinary motion. But even that kind of motion cannot be entertained by the trial court in vacation; it must be presented during a term of court. Brinkley v. Buchanan, 55 Ga. 342; Ferrill v. Marks, 76 Ga. 21; Blalock v. Waggoner, 82 Ga. 122, 8 S. E. 48; Collier v. State, 115 Ga. 17, 41 S. E. 261. The earlier case of Jackson v. Clark,

52 Ga. 53, if it can be construed as permitting an extraordinary motion in vacation, must be considered as having been overruled by the later cases above cited. In Fambles v. State, 97 Ga. 625, 25 S. E. 365, the motion relied on as an extraordinary one was presented at a regular term of court.

But it is argued that appellant failed to exhaust his remedies in the state courts, because it is said that he could have made application to the trial court to call a special term for the purpose of considering a motion for new trial to be presented in term time. In support of this argument reliance is had on section 796 of the Georgia Penal Code, which provides for the calling by trial judges of adjourned and special terms of court. Such judges are "authorized to hold special terms of said courts for the trial of criminals, or for the disposition of civil business, either or both, in any county of their circuits, at discretion," etc. It doubtless is true that usually the discretion conferred upon trial courts must be reasonably and not arbitrarily exercised. But we think that the authority here conferred is to call or refuse to call special terms of court at the will or pleasure of the trial judge. What evidently was intended was to allow him to hold special terms whenever in his judgment they ought to be held. The language used affords no basis for the contention that the trial judge's action in refusing to call a special term could be made the basis of complaint in that or in any other court; and so appellant would have had no right to assign error upon the refusal of the trial court to grant his application for a special term. It cannot be said that one has a legal remedy where the relief sought may be granted or withheld at will. Upon the showing made by the petition, appellant was not afforded an opportunity to have the judgment of conviction against him set aside either before or after the adjournment of the special term of court; and he therefore became entitled to resort to the remedy afforded him by the writ of habeas corpus in the federal district court, in order that he might be heard to question the validity of the sentence that was imposed upon him.

We conclude that the writ applied for should have been issued, and that a hearing should promptly be had to determine whether the allegations of the petition are true or false. If those allegations are true, the sentence imposed upon appellant should be held for naught; if they are false, of course the writ should be discharged.

The order appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

WALKER, Circuit Judge (dissenting).

It seems to me that the order appealed from was proper because the allegations of the petition for the writ of habeas corpus do not show that the appellant, before filing that petition, availed himself of process supplied by the law of Georgia for annulling a judgment of conviction brought about by conditions of mob violence prevailing throughout the trial, or that he had any sufficient excuse for failing first to apply to a state court for relief. The opinion in the case of Moore v. Dempsey, 261 U. S. 86, 43 S. Ct. 265, 67 L. Ed. 543, shows that the court expressly assumed that the corrective process supplied by the state with reference to a judgment of conviction based upon a verdict produced by mob domination may be so adequate that interference by habeas corpus ought not to be allowed. It is not to be doubted that the state of Georgia supplied adequate corrective process for annulling a judgment based on a verdict brought about by mob pressure. "Georgia has adopted the familiar procedure of a motion for a new trial, followed by an appeal to its supreme court, not confined to the mere record of conviction, but going at large, and upon evidence adduced outside of that record, into the question whether the processes of justice have been interfered with in the trial court. Repeated instances are reported of verdicts and judgments set aside and new trials granted for disorder or mob violence interfering with the prisoner's right to a fair trial." Frank v. Mangum, 237 U. S. 309, 335, 35 S. Ct. 582, 590, 59 L. Ed. 969. The law of Georgia permits in extraordinary cases a motion for new trial to be made after the expiration of the term at which the judgment was rendered, and authorizes judges of superior courts to hold special terms for the trial of criminals in any county of their circuits, at discretion. Michie's Georgia Code 1926, §§ 6089, 6090; Ga. Penal Code, § 796. In the case of Jackson v. Clark, 52 Ga. 53, the Supreme Court of Georgia decided that the action of the counsel appointed by the court to defend one charged with homicide as principal in the second degree in withdrawing, without the knowledge or consent of the defendant, and before the court had expressed any opinion of its merits, a motion for a new trial based upon the admission over his objection of evidence of the conviction of another per-

son charged in the same indictment with the same homicide as principal in the first degree presented such an extraordinary case as entitled the defendant, by a motion for a new trial made after the adjournment of the term, to have the court pass on the question which had been raised by the motion which was so abandoned. The decision that such an abandonment of a motion for a new trial based on the admission of asserted illegal evidence authorizes the making of the extraordinary motion for a new trial provided by the Georgia statute amply supports the conclusion that the failure of the counsel appointed by the court to defend the accused in the trial on a criminal charge to make any motion for a new trial when obviously the verdict of guilt was produced by mob violence, the trial being a mere sham, entitles the accused, by a motion for a new trial made after the expiration of the term, to invoke the decision of the court on the question whether a new trial should be granted for disorder or mob violence interfering with the prisoner's right to a fair trial. So far as the writer is advised, the ruling in the case of Jackson v. Clark, supra, supporting the just stated conclusion has not been questioned in any later Georgia decision. What was said in the opinion in the case of Fambles v. State, 97 Ga. 625, 25 S. E. 365, plainly indicates that the court deciding that case would give the failure of counsel appointed by the court to defend one charged with crime to make a motion for a new trial, where obviously such an application ought to have been made by reason of circumstances attending the trial making it a mere nullity, the effect of making the case an extraordinary one within the meaning of an above cited statute. In the case of Bloodworth v. State, 160 Ga. 197, 127 S. E. 458, it was decided that under the last above cited statute the judge was authorized to call a special term of court for the purpose of resentencing a prisoner. It seems that a motion for a new trial in a criminal case is as much a part or an incident of the trial as a resentencing of the prisoner.

Nothing in the petition for the writ of habeas corpus indicates that the counsel who was appointed by the court to represent the appellant construed his appointment as covering only the actual trial, and as not including the making of motions for continuance, change of venue, and a new trial. Georgia cases above cited show that counsel so appointed to defend one accused of crime is under a duty to make a motion for a new

trial when such a motion is called for by the existence of grounds of grave and serious importance. The allegations of the petition do not show that the counsel so appointed was influenced by any threat of mob violence to himself personally or that the threat of mob violence which had prevailed throughout the trial continued after the trial was ended and the accused had been carried back to Atlanta, entirely out of reach of the mob. So far as appears the failure of counsel to make a motion for new trial between the time the trial ended, and the adjournment of the court the next day did not result from anything except the uncoerced election of the counsel not to make such a motion. It appears that after the adjournment of the court the appellant had counsel other than the one appointed by the court—the attorneys who in his behalf filed his petition for the writ of habeas corpus, and appear for him in this court. Nothing contained in the petition is inconsistent with the conclusion that the counsel now representing the appellant were engaged or employed in ample time prior to the date set for execution to apply to the judge of the court for the calling of a special term during which an extraordinary motion for a new trial could be made and acted on. Certainly it is not to be presumed that a judge so applied to would so exercise his discretion as to prevent the presentation and hearing of a motion for a new trial on a ground which to his knowledge should have been made the basis of a motion for a new trial during the term at which the judgment of conviction was rendered. It was within his power to call a special term of court at which he could suspend the sentence imposed, or postpone the execution of it pending action on a motion for a new trial made after the adjournment of the term of court at which the judgment of conviction was rendered, and to vacate that judgment by granting such motion. From the failure of the allegations of appellant's petition to show that, before he filed that petition, he invoked the exercise of such power possessed by the state court, or that there was any sufficient excuse for such failure to do so, it is to be inferred that the filing of that petition was unwarranted because the relief it sought might have been obtained in a state court if it had been duly applied for. A remedy which could be granted is not denied to one who fails to apply for it.

It appears from the opinion in the case of Moore v. Dempsey, supra, that the allegations of the petition for the writ of habeas corpus show that by reason of conditions of mob violence prevailing throughout the trial the verdict and judgment of conviction were absolute nullities, that the state courts, though duly appealed to for the correction of the wrong, failed to correct it, and that the reviewing tribunal, by way of answer to the objection that no fair trial could be had in the circumstances, stated that it could not say "that this must necessarily have been the case"; that eminent counsel was appointed to defend the petitioner, that the trial was had according to law, the jury correctly charged, and the testimony legally sufficient. Following recitals to the just stated effect the court stated its conclusion by saying: "We shall not say more concerning the corrective process afforded to the petitioners than that it does not seem to us sufficient to allow a Judge of the United States to escape the duty of examining the facts for himself when if true as alleged they make the trial absolutely void. We have confined the statement to facts admitted by the demurrer. We will not say that they cannot be met, but it appears to us unavoidable that the District Judge should find whether the facts alleged are true and whether they can be explained so far as to leave the state proceedings undisturbed." The result of the court's action in that case was to make it the duty of a judge of the United States to examine the facts for himself when the allegations of the petition for the writ of habeas corpus show that petitioner's conviction of a capital crime was a nullity by reason of mob violence interfering with his right to a fair trial, and that the corrective process supplied by the state, as that process was construed and applied by the courts of the state duly appealed to by the petitioner for the correction of the wrong, were inadequate for the accomplishment of that result, though the alleged state of facts having the effect of nullifying the verdict and judgment of conviction were duly disclosed to those courts—in other words, to examine the facts for himself for the purpose of determining whether the corrective process supplied by the state, as that process was administered in that case, was or was not as inadequate as it appeared to be from the allegations of the petition for the writ of habeas corpus. A material difference between that case and the instant one is that in the former it appeared from the allegations of the petition that the petitioner unavailingly had applied to the courts of the state for the annullment of a conviction of a capital offense, which was duly disclosed to those

courts to have been the result of the petitioner being deprived of the benefit of due process of law, while in the latter, the annullment of such a conviction by a judge of a court of the United States was applied for without the applicant first having sought such annullment in a state court which was vested with power to administer corrective process, which, as construed and administered by the courts of that state, is fully adequate. Resort to a judge or court of the United States to protect one from being deprived by the action of a state court of life or liberty without due process of law is not warranted if such relief is not first sought in a court of the state which supplies adequate process for the correction of such a wrong.

Powers possessed by Georgia judges and courts would have been exercised if, after the final adjournment of the term of court at which appellant was convicted, no motion for a new trial having been made at that term, the judge of that court had called a special term and during that term had acted on an extraordinary motion for a new trial, and if, on an appeal to the Supreme Court following a denial of that motion, that court had set aside the conviction. Without first invoking an exercise of those powers or showing a sufficient excuse for failing to do so, appellant was not entitled to apply to a federal judge or court for relief which was grantable by a state court. To recognize a right of the appellant to get relief in a federal court in such circumstances as are disclosed by his petition amounts to approving unnecessary meddling by federal judges or courts with the administration of criminal laws of a state by the courts of the state, which are vested with power to correct the wrong alleged, and well might be expected to have the effect of encouraging attempts to substitute federal habeas corpus proceedings for established corrective procedure available in state courts for vacating wrongful convictions of crime. The allegations of appellant's petition are consistent with this case being an instance of one appealing to a judge or court of the United States for protection from action of a state court claimed to have the effect of depriving him of life or liberty without due process of law when adequate protection of his right to have the benefit of due process of law may be obtained by resort to courts of the state.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.