**BRIDWELL v. ADERHOLD, Warden.**

**JOHNSON v. SAME.**

Nos. 1029, 1030.

District Court, N. D. Georgia.

Dec. 19, 1935.

Frank A. Doughman, of Atlanta, Ga., for petitioners.

Lawrence S. Camp, U. S. Atty., and H. T. Nichols, Asst. U. S. Atty., both of Atlanta, Ga., for respondent.

UNDERWOOD, District Judge.

Petitioners were defendants in the same indictment, the questions involved in their habeas corpus cases were the same, and they were heard together, though separate orders are entered in each case.

Upon the allowance of these writs and the appearance of petitioners, who were men of little education and without counsel or funds to procure same, the court suggested that, if petitioners desired, counsel would be appointed to represent them and aid the court in these proceedings, since the partial hearing then had disclosed that serious questions were involved and that it would be necessary to take testimony in the cases. Such request was made and counsel appointed. The cases were then continued to allow counsel time to prepare same and take testimony.

Later the cases came on for hearing upon oral evidence and depositions, and the cases are now ready for disposition.

Petitioners were arrested in Charleston, S. C., on November 21, 1934, charged with possessing and uttering counterfeit money. A preliminary hearing was had before the United States Commissioner at which an attorney appeared on their behalf. They were bound over by the Commissioner to await the action of the United States grand jury, and were confined in jail because of their inability to give bail. On January 21, 1935, they were indicted by the grand jury, but were not notified of the finding of the indictment

until they were brought into court on January 23, for arraignment and trial.

There was some question as to the form of the arraignment, but it was sufficient so far as this proceeding is concerned. Upon arraignment, petitioners pleaded not guilty, and the court asked them if they had counsel, but did not ask them if they wished the court to appoint counsel. Petitioners admit they did not request the court to appoint counsel, but claim that they made such request of the District Attorney, who replied that in the state of South Carolina the court did not appoint counsel unless the defendant was charged with a capital offense. The District Attorney denied this.

The court thereupon asked petitioners if they were ready for trial, and they replied in the affirmative and proceeded to trial, although they had just been informed of the finding of the indictment and had no witnesses present, claiming that they relied on the District Attorney's statement that they were not entitled to counsel and that it was too late then to have witnesses subpœnaed. This assertion the District Attorney also denies.

Both petitioners lived in distant cities of other states and neither had relatives, friends, or acquaintances in Charleston. Both had little education and were without funds. They testified that they had never been guilty of nor charged with any offense before, and there was no evidence in rebuttal of these statements.

Petitioners were arraigned, tried, and convicted on January 23d, and sentence of four years and six months was imposed on each immediately thereafter, about 5:30 p. m. on the same day. They did not then ask for a new trial or inform the court that they wished to appeal the case, or ask for counsel.

They were remanded to jail, where they asked the jailer to call a lawyer for them, but were not permitted to contact one. They did not, however, undertake to get any message to the judge.

At about 8 o'clock in the morning of January 25th, they were transported by automobile to the Federal Penitentiary in Atlanta, Ga., arriving about 5 p. m. the same day.

There, as is the custom, they were placed in isolation and so kept for sixteen days without being permitted to communicate with any one except the officers of the institution, but they did see the officers daily. They made no request of the officers to be permitted to see a lawyer, nor did they ask the officers to present to the trial judge a motion for new trial or application for appeal or notice that they desired to move for a new trial or to take an appeal.

On May 15, 1935, petitioners filed applications for appeal which were denied because filed too late.

The questions presented in these cases are whether or not petitioners' constitutional right to assistance of counsel has been denied, and whether or not they have been deprived of due process of law; and, if so, whether this court, in a habeas corpus proceeding, can grant relief.

There is no evidence in these pleadings tending to show that the trial, apart from the irregularities stated above, was not fair, or that petitioners were innocent.

The Sixth Amendment of the Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

The Fifth Amendment, of course, provides that no one shall be deprived of his life, liberty, or property without due process of law.

■ It will be observed that the guaranty of the right to assistance of counsel and compulsory process for obtaining witnesses is contained in the same clause and expressed in substantially the same language as the guaranty of the right to trial by jury. The amendment guarantees this right to the accused "in any criminal prosecution." There is no limitation of these rights to cases where the accused is charged with a capital offense, as urged by respondent, and no reason appears in logic, morals, or humanity why an accused, in danger of deprivation of his life or liberty, should, in any criminal prosecution, be deprived of these rights by implication. These are fundamental rights which the courts should safeguard with meticulous care and award

to the accused, whether requested or not, unless waived by him in a manner showing his express and intelligent consent.

This seems to be established by the Supreme Court in the case of Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 263, 74 L.Ed. 854, 70 A.L.R. 263, in which the court say with reference to the analogous right of trial by jury: "Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity."

In this case petitioners were being prosecuted on an indictment of two counts, where a maximum penalty of fifteen years in the penitentiary and a fine of $5,000 on each count might have been imposed. The seriousness of the offense, therefore, called for the caution required by the Supreme Court where there was a departure from "any of the essential elements" of the trial, and it would seem that the technicalities involved in the trial and subsequent possible proceedings for a new trial or an appeal were such as to require the appointment of counsel as an essential element of the trial. "It goes without saying that an accused who is unable by reason of poverty to employ counsel is entitled to be defended in all his rights as fully and to the same extent as is an accused who is able to employ his own counsel to represent him." Downer v. Dunaway (C.C.A.5th) 53 F.(2d) 586, 589.

"Under the Sixth Amendment to the Constitution the defendants were entitled to have the assistance of counsel for their defense and also to have compulsory process for obtaining witnesses in their favor. To one accused of crime these are very substantial rights." Paoni v. United States (C.C.A.3rd) 281 F. 801, 803.

See, also, Dillingham v. United States (C.C.A.5th) 76 F.(2d) 36.

This provision of the amendment "was inserted in the Constitution because the assistance of counsel was recognized as essential to any fair trial of a case against a prisoner." Ex parte Chin Loy You (D.C.) 223 F. 833, 838.

The Supreme Court have said with great force, in the case of Powell v. State of Alabama, 287 U.S. 45, 72, 53 S.Ct. 55, 65, 77 L.Ed. 158, 84 A.L.R. 527, that "The necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment." These words would apply, of course, with equal force to the Fifth Amendment. The court goes on to say in this case (287 U.S. 45, at page 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 84 A.L.R. 527), with respect to what a hearing includes, that "the right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him."

▮ I am of the opinion, therefore, that petitioners were deprived of their constitutional rights, but the question still remains as to whether or not they can take advantage of this on habeas corpus.

▮ The trial court had jurisdiction of the offense and the accused, and there was ample provision of law for appeal. This being true, there is no ground for discharge upon habeas corpus, unless the circumstances subsequent to the trial amount to a deprivation of the opportunity to present a motion for new trial and to take an appeal.

▮ A fair opportunity should have been afforded for the presentation of a mo-

tion for a new trial or appeal before the period for the allowance of same should lapse. Downer v. Dunaway, supra, 53 F.(2d) 586, pages 589, 590.

While the time for filing a motion for new trial and for taking an appeal has been limited to three and five days, respectively, this has been done under proper authority of the Supreme Court, and such does not deprive the accused of due process of law. Something more must appear, and petitioners must show that they exhausted all means open to them to have their case reviewed in accordance with the procedure usual in such cases. Habeas corpus cannot take the place of an appeal. This is too well settled to require citation of authorities.

[7] Petitioners did make some effort to have the jailer secure a lawyer for them, but it does not appear that they, at the time sentence was imposed, or at any time thereafter, advised the trial judge or undertook to get notice to him that they desired to file a motion for new trial, or to take an appeal. While the evidence shows that petitioners were confined in jail, nevertheless they had access to the jailer, who doubtless would have transmitted to the judge any message petitioners wished to send, if they had made such request of him. At any rate, it does not appear that he refused such a request or that any was made. It also appears that they were in daily contact with the officers of the penitentiary before the time for taking an appeal had lapsed, but made no request of any of these officials either to get counsel for them or to get notice to the trial judge, nor did they intimate to them in any way that they wished to contest their conviction.

There is no evidence or claim that the judge was hostile or prejudiced or swayed by any improper influence, such as that of a mob or of a dominating hostile public opinion, but, on the other hand, it clearly appears that he did not know either of the defendants, that he did not proceed with the trial until after both petitioners had announced that they were ready for trial, and that he did not conduct their case differently from other cases of like kind.

It is unfortunate, if petitioners lost their right to a new trial through their ignorance or negligence, but such misfortune cannot give this court jurisdiction in a habeas corpus case to review and correct the errors complained of.

Upon the record, therefore, I am of opinion that the facts are not sufficient to justify a finding that the errors complained of were sufficient to make the trial void and justify its annulment in a habeas corpus proceeding, but that they constituted trial errors or irregularities which could only be corrected on appeal. Ex parte Harding, 120 U.S. 782, 7 S.Ct. 780, 30 L.Ed. 824; In re Shibuya Jugiro, 140 U.S. 291, 11 S.Ct. 770, 35 L.Ed. 510.

Whereupon, it appearing that the relief sought by petitioners cannot be afforded by habeas corpus, an order has been issued, contemporaneously herewith, in each case discharging the writ and remanding the petitioner to the custody of the respondent.