JOHNSON v. ZERBST, Warden.

BRIDWELL v. ZERBST, Warden.

Nos. 8562, 8563.

Circuit Court of Appeals, Fifth Circuit.

Nov. 24, 1937.

Elbert P. Tuttle, of Atlanta, Ga., for appellants.

Bates Booth, Sp. Asst. to Atty. Gen., and Lawrence S. Camp, U. S. Atty., and Harvey H. Tisinger and H. T. Nichols, Asst. U. S. Attys., all of Atlanta, Ga., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

These cases present appeals from judgments dismissing petitions for writs of habeas corpus to release appellants from the Atlanta penitentiary. The evidence is identical in both cases. By agreement only one record was printed, upon which both cases were submitted. The record discloses the following facts:

Appellants were arrested in Charleston, S. C., on November 21, 1934, charged with feloniously uttering and passing four counterfeit $20 Federal Reserve notes and with knowingly and feloniously possessing 21 counterfeit Federal Reserve Bank notes, with intent to defraud. A hearing was had before a United States commissioner, at which they were represented by counsel of their own choosing. They were bound over to await the action of the United States grand jury and, being unable to give bail, were confined in a local jail. An indictment was returned against them at the next term of court, and on January 23, 1935, they were brought into court, pleaded not guilty, and were tried to a jury, with the result that a verdict of guilty was rendered. They were sentenced to be imprisoned in the Atlanta penitentiary for 4 years and 6 months. No appeal was taken from this judgment. In December, 1935, they filed petitions in the United States District Court for the Northern District of Georgia, seeking release on habeas corpus.

The petitions alleged that the judgment of conviction was an absolute nullity, on the grounds that they were innocent of the charge and were denied compulsory process for obtaining witnesses in their favor and to have the assistance of counsel for their defense, in violation of the Sixth Amendment; and were therefore denied due process of law, in violation of the Fifth Amendment. The District Court appointed competent counsel to represent them on the trial of the habeas corpus cases and evidence was taken on the hearing. The District Court reached the conclusion that they had been deprived of constitutional rights as alleged, but that, as the trial court had jurisdiction and the judge was not prejudiced nor swayed by any improper influence, the judgment was not void and the errors and irregularities complained of could be corrected only on appeal. Bridwell v. Aderhold (D.C.) 13 F.Supp. 253. No appeal was taken from these judgments. However, in December, 1936, the applications for release on habeas corpus were renewed on the same grounds. The District Court again appointed competent counsel to represent appellants on the second trial before him, and they were represented by competent counsel on this appeal.

There is some conflict in the evidence appearing in the record, but the following facts may be considered as proved with reasonable certainty. When appellants were brought into the District Court in South Carolina, the indictment was read to them and they signed pleas of not guilty. They were asked by the judge if they were represented by counsel and replied "No," and were then asked by him if they were ready for trial and replied "Yes." They did not request the judge to appoint counsel for them, he did not do so of his own motion, and they were not represented by counsel at the trial.

Appellants are white men, and were both in the service of the United States in the Marine Corps. Bridwell had had 11 years' continuous service and was a corporal. The term of service of Johnson is not shown. Bridwell had attended a country school until he was 15 years of age. Johnson had had fifth grade education. During the trial Bridwell assumed charge of the defense for both appellants, cross-examined government witnesses, took the stand in his own defense, and at the close of the case addressed the jury. Johnson did not testify. There was evidence tend-

ing to show that Bridwell conducted the defense very well for a layman and showed some familiarity with legal procedure. During the trial Bridwell stated that he did not think that men of such limited knowledge as appellants would know counterfeit money when they saw it and asked that a witness be called to establish whether the money was counterfeit. The district attorney procured a witness, who was a deputy sheriff in charge of tax collections and handled considerable money in performing his duties. He testified that the money was counterfeit and that that fact was readily discernible. Bridwell had objected to the testimony of other witnesses, but no objection was made to the introduction of this witness nor to his testimony.

Bridwell testified the attorney who represented them before the commissioner continued to represent them until some time in January and was paid $100 for his services; that he released them because they would not follow his advice to plead guilty and they had no more money to pay him; that before the trial they made efforts to secure another lawyer, naming him, but were unable to get in touch with him because they were in jail. Bridwell also testified, and this was corroborated by Johnson, that, in the presence of the judge, he asked the United States attorney if he could be represented by counsel and was told by him that in South Carolina counsel was not appointed by the court except in capital cases. He then asked if he could have witnesses subpœnaed, and he was told by the United States attorney that it was too late. The United States attorney, his assistant, and the clerk of the court, who were present at the time, denied that Bridwell made inquiry as to securing either counsel or witnesses and denied that the United States attorney made the statements attributed to him. Appellants further testified they did not know and were not advised of their right to ask for a new trial or take an appeal until after they had been removed to the penitentiary, when they were told by a fellow prisoner. With his assistance they prepared an application for appeal, but the trial judge declined to allow it on the ground that it came too late and he was without jurisdiction. There is no doubt that the time for an appeal had elapsed under the criminal appeals rules.

Appellants rely upon the cases of Downer v. Dunaway (C.C.A.) 53 F.(2d) 586, and Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. In Downer v. Dunaway we reversed a judgment of the District Court dismissing an application for habeas corpus without a hearing. The defendant was a negro charged with raping a white woman. The trial was conducted immediately after the crime was alleged to have been committed and under pressure of such great public feeling against the prisoner that the militia had to be called out to protect him during the trial. While the defendant was represented by counsel until the verdict was rendered, counsel did nothing to perfect an appeal to the Supreme Court of Georgia. The fact that the accused was not represented by counsel at a crucial time was not entirely the basis of our decision. We concluded that, assuming the allegations of the petition to be true, the trial was dominated by the mob so as to deprive defendant of due process of law.

Powell v. Alabama went up on writ of certiorari to the Supreme Court of Alabama and was not decided on application for habeas corpus. In that case the defendants were also negroes charged with raping white women. The danger of lynching was imminent, and it was necessary to call out the militia to protect the prisoners during the trial, which was held immediately after they were arrested. The defendants were not represented by counsel. It was held that in the circumstances attending the trial, considering the youth, ignorance, and illiteracy of the defendants, it was the duty of the court to appoint counsel to aid them in the preparation of their defense and in the trial of the case, whether requested or not. We do not consider these cases controlling as applied to the facts in the cases at bar.

It has been repeatedly held that the writ of habeas corpus may not be substituted for a writ of error or an appeal. If the trial court had jurisdiction, it is only in extraordinary cases, where the circumstances surrounding the trial make it a sham and a pretense, that the writ will lie on the ground that the judgment is a nullity for want of due process of law, even though it be alleged the accused has been denied rights guaranteed by the Constitution. Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009; Goto v. Lane, 265 U.S. 393, 44 S.Ct. 525, 68 L.Ed. 1070. The cases at bar do not present extraordinary features. Appellants were not immature and had sufficient education to under-

stand the charge against them. There was no undue haste in bringing them to trial, there was no popular feeling against them, and the trial was quiet and orderly. They had over 2 months in which to procure counsel or to seek advice from their friends. The presiding judge was not prejudiced against them. There is no showing that there were any witnesses they desired to have summoned to give testimony in their favor. They had the right of appeal, and the reasons for their not doing so are immaterial. They did not request the trial judge to appoint counsel for them. Perhaps it would have been better if he had done so of his own motion, but we are not advised of any decision of a court of last resort, state or federal, holding that in a noncapital case he was bound to do so. In fact, a number of decisions to the contrary, which we need not review, are cited by counsel for the United States. In Powell v. Alabama the decision was that counsel should have been appointed in that case, but the court expressly refrained from deciding whether that rule should obtain in all cases.

Due process of law does not absolutely require that the defendant in every criminal case be represented by counsel. He may expressly or impliedly waive his right and suffer no wrong. When a defendant is without counsel, the judge usually protects his rights. It is not suggested that in these cases the evidence was insufficient to support the conviction.

The judgments dismissing the petitions were right. They are affirmed.