YOUNGE v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. June 12, 1915.)

No. 1236.

1. CRIMINAL LAW ⬤�net586—CONTINUANCE—DISCRETION—REVIEW.

A motion for a continuance is addressed to the discretion of the trial court, and its action is not subject to review, unless such discretion is abused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1311; Dec. Dig. ⬤�net586.]

2. CRIMINAL LAW ⬤�net598—CONTINUANCE—ABSENCE OF WITNESSES—DILIGENCE.

Defendant, residing in the Southern district of West Virginia, was indicted at Clarksburg in the Northern district on October 9th. On October 28th, he appeared before a commissioner of the Southern district and gave bond for his appearance in the Northern district on the first day of the next regular term; the recognizance not naming the place at which the court was to be held. On November 5th, without his knowledge or consent, the case was transferred to Philippi, where it was docketed on November 11th, and called for trial the following day. On the day the case was docketed he secured process for witnesses, and when the case was called for trial moved for a continuance because of their absence. Such witnesses were in different states and traveling from one place to another, and their testimony was material. *Held*, that the refusal of a continuance, because due diligence to procure the attendance of the witnesses had not been used, was erroneous.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1335–1341; Dec. Dig. ⬤�net598.]

3. CRIMINAL LAW ⬤�net649—TRIAL—ADJOURNMENT—ABSENCE OF WITNESSES.

Where defendant was forced into trial over his protest, after he had filed an affidavit as to the materiality of absent witnesses, the impossibility of securing them, the exercise of due diligence on his part, and his inability to prove the facts by any other witnesses, the request of his counsel, at the close of the government's case, that the trial be prolonged until the next day to enable him to procure the presence of two witnesses, whose presence he believed he would be able to secure, should have been granted, and it was prejudicial error to deny his motion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1512–1515; Dec. Dig. ⬤⟩649.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

Eugene L. Younge was convicted of an offense, and he brings error. Reversed, and new trial awarded.

Charles M. Murphy and A. G. Jenkins, both of Philippi, W. Va., for plaintiff in error.

S. W. Walker, U. S. Atty., of Martinsburg, W. Va., for the United States.

Before PRITCHARD and WOODS, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. On the 9th day of October, 1913, the grand jury of the United States for the Northern district of West Virginia, at Clarksburg, returned an indictment against the plaintiff

⬤⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in error, hereinafter called the defendant, for violating Act Cong. June 25, 1910, c. 395, 36 Stat. 825 (Comp. St. 1913, §§ 8812–8819), commonly known as the "White Slave Act."

The indictment contained three counts; the first charging that the defendant did, on the ——— day of September, 1912, within the jurisdiction of said court, knowingly, unlawfully, and feloniously transport and cause to be transported, and aided and assisted in obtaining transportation for and in transporting, Mabel S. Rome, a woman, in interstate commerce, from Parkersburg, in the state of West Virginia, to Marietta, in the state of Ohio, for the purpose of prostitution, debauchery, and other immoral purposes, with intent to entice and compel the said Mabel S. Rome to become a prostitute, or give herself up to debauchery, and to engage in immoral practices. The second count covered the same transaction, and charged the defendant with procuring or assisting in procuring a railroad ticket for the said Mabel S. Rome, to make the trip between Parkersburg, W. Va., and Marietta, Ohio, for the purposes aforesaid; and the third charged him on said date with unlawfully and feloniously persuading, inducing, and coercing, and assisting in persuading, inducing, and coercing, the said Mabel S. Rome to make the trip aforesaid, for the purposes aforesaid.

On the return of the indictment, a capias was awarded by the court against the defendant, returnable forthwith before said court at Clarksburg to answer the indictment. Upon this capias the marshal made return on the 10th of October, 1913, that he was unable to find the defendant in his district; and on the 9th day of October, 1913, the court also entered the following order:

"And it is ordered that the clerk of this court do make a copy of the indictment in this case, and send same to the United States attorney for the Southern district of West Virginia."

On the 28th day of October, 1913, the defendant appeared before a United States commissioner for the Southern district of West Virginia, and entered into a recognizance in the sum of $2,000, conditioned for his appearance before the District Court of the United States for the Northern District of West Virginia, on the first day of the next regular term thereof, to answer the indictment.

On the 5th day of November, 1913, the following order was entered at Clarksburg:

"On motion of the district attorney of the United States, and for reasons appearing to the court, it is ordered that this case be transferred and remitted from this court to the District Court of the United States for the Northern District of West Virginia, sitting at Philippi, for further proceedings to be had therein."

On the 11th day of November, 1913, the court, sitting at Philippi, entered the following order:

"This day came as well the attorney of the United States as the defendant, Eugene L. Younge, in person and by his attorney. Thereupon the district attorney of the United States presented to the court the original indictment and a transcript of the record in this case from the District Court of the United States for the Northern District of West Virginia, sitting at Clarks·

burg, and on his motion it is ordered that said transcript be filed, and said cause docketed in this court for further proceedings to be had therein."

On the next day, the 12th of November, the case was called for trial, and the defendant, upon his arraignment, moved the court for a continuance, and filed in support thereof his affidavit to the effect that he was not ready to go to trial at that time, that he had been unable to get his witnesses, that it was the first calling of the case, and that he had had no time to confer with counsel and locate his witnesses, and that his witnesses were scattered; that one of his witnesses, according to his best information, was in Ohio, another in the Southern district of West Virginia, and another in North Carolina; that the evidence of his witnesses was material; that he was unable to prove the same facts by any one else, and that he could not safely go to trial without their presence; that his motion was not made for delay, but for the purpose of enabling him to have his witnesses ready to meet the government's charges; that he had used due diligence to ascertain their whereabouts and procure their attendance, without success. The court overruled the defendant's motion, and proceeded with the trial, and he thereupon pleaded not guilty.

The government introduced as witnesses only the said Mabel S. Rome, the female mentioned in the indictment, and her mother, and the defendant testified in his own behalf. The trial resulted in a verdict of guilty, upon which the court entered judgment, and sentenced the defendant to three years in the penitentiary. During the progress of the trial, and at the conclusion of the government's testimony, the defendant, by counsel, advised the court that he had been endeavoring during the day, over the phone, to procure the presence of two witnesses from Parkersburg, whose attendance he felt he could procure by the next morning, and asked the court to postpone the further hearing of the trial until the next morning, which the court overruled, and the defendant excepted. From the judgment rendered on the verdict this writ of error was sued out.

The defendant makes four assignments of error—the first, to the action of the court in refusing to grant a continuance; second, to the action of the court in allowing certain remarks to be made by the district attorney to the jury, pending argument; and the third and fourth, to the court's action in overruling the motion to set aside the verdict and grant a new trial, and entering judgment on the verdict.

[1] In the view taken by the court, it will not be necessary to pass on the assignments of error other than the first, which relates to the court's action in ruling the defendant into trial, and refusing to postpone the hearing after the government's witnesses were examined, as requested by the defendant. The law governing federal courts upon applications for continuances is well settled, namely, that such motions are addressed to the discretion of the trial court, and its action is not subject to review, unless it be shown that the exercise of discretion was abused. Isaacs v. United States, 159 U. S. 487, 489, 16 Sup. Ct. 51, 40 L. Ed. 229, and cases cited. In that case, Mr. Justice Brown, speaking for the Supreme Court, noted that 49 days before a case was called for trial the defendant made application, which was grant-

ed, to have a witness summoned at the expense of the government, but did not thereafter show other diligence, or that any attachment was asked for to secure the presence of the witness, although the trial continued several days, or make explanation why the subpœna asked for was not served; and he especially emphasized the fact that the defendant's affidavit failed to show that he could not make the same proof by other witnesses, or go safely into trial without the witness in question, and that it was apparent in the affidavit that all that the witness could prove was established by other testimony, including that of the defendant, and hence that there was no error committed by the lower court in denying the motion for a continuance, and in ruling the defendant into trial.

In the present case the government's proof is to the effect that the defendant and the prosecutrix both resided at Clarksburg, W. Va.; that the accused, in contemplation of a trip to a fishing camp on the Kanawha river, some six miles above Parkersburg, W. Va., arranged with the prosecutrix, whose transportation he provided for, that she would go to Parkersburg, a distance of some 80 miles, where he would join her, and they would go to Marietta, Ohio. Accordingly, in the latter part of August or first of September, 1912, the arrangement was carried out, she leaving Clarksburg, and he joining her at Parkersburg, and then they proceeded by street car to Marietta, Ohio, where they spent the night and part of the following day together, when the defendant left Marietta, and she paid a visit to her uncle there, making the return trip home late in the evening of that day.

The accused positively denied every statement of the government's witness, and that he had ever been with her to Marietta, or at any time had improper relations with her, and testified that during the time referred to he was at the fishing camp for a period of 10 days, and that he never left the camp from the time he arrived there until his departure for home, and that he was in the company of a number of friends at the camp, they being the witnesses whose testimony he desired. The importance of the testimony of these witnesses, as bearing on the merits of the case, as to the material parts of which said Mabel S. Rome and the accused alone testified, is quite apparent, and, if they corroborated the accused, would strongly tend to establish his innocence.

The learned judge of the lower court was of opinion that the defendant had not used due diligence to procure the attendance of his witnesses; the court certifying in the order of the 12th of November, 1913, overruling the defendant's motion for a continuance:

"That the defendant had made no attempt until the day before to have the witnesses summoned, or to procure their attendance."

[2] While not unmindful of the necessarily large discretion vested in trial courts in granting or refusing continuances, we are convinced that in this case, under its peculiar circumstances, prejudicial error was committed against the accused in ruling him into trial, as well as in refusing, after the trial had begun, as hereinafter shown, and the government had introduced its testimony, to postpone the further hear-

ing until the next morning, in order that the accused might secure the witnesses whom he had been able to locate by telephone, during the progress of the trial. Ordinarily, to have delayed summoning witnesses until the day before trial would be inexcusable; but under the facts in this case it by no means appeared that the accused could have summoned them earlier, or that he was advised of the place and time of trial in time to locate and secure the presence of his witnesses, who were scattered, or difficult of location, as the defendant's affidavit and the testimony shows. The defendant at the time of the trial resided in another judicial district, and in another portion of the state. He was indicted on the 9th day of October, 1913, at Clarksburg, in the Northern district of West Virginia, to which place a capias against him was made returnable. On the 28th of October, he appeared before a United States commissioner of the Southern district of West Virginia, and gave bond for his appearance before the District Court of the United States for the Northern District of West Virginia on the first day of the next regular term thereof. The recognizance, however, did not name the place at which the court was to be held, and presumably it would have been at Clarksburg, where the case was pending. The theory of the government is that it referred to the next term of the court for the Northern district of West Virginia, wherever it might be held.

After the execution of this recognizance, on the 5th of November, 1913, the case, without the defendant's knowledge or consent, was transferred to Philippi, at which place it was docketed on the 11th of November, 1913. There was evidently some uncertainty as to where the defendant was to appear. The place, manifestly, should have been stated in the recognizance. Until the 5th day of November, the case was pending at Clarksburg, and was never in Philippi until the 11th of November, 1913, the day before the trial. The record is silent as to any knowledge on the part of the defendant of the removal of the case from Clarksburg to Philippi. The defendant lived several hundred miles away, and, assuming that he was informed with reasonable promptness of the transfer of the case from one place to the other, still only seven days intervened from the time of removal until the trial, and it would have been extremely difficult within that time for him to have gotten his witnesses together, and secured their presence, if indeed he knew when they would be needed, until the case was docketed at Philippi. He appeared in court on the very day the case was docketed, and secured process for his witnesses; but it was too late to get them there the next day. Whether he could have secured process earlier—that is, before the case was docketed there at Philippi—may be questioned; but so it is he did secure his process the first day the case was docketed, and it is entirely clear, taking into account the time between the removal of the case from Clarksburg and its docketing in Philippi, and the location of witnesses whose presence was desired, namely, persons in different states, and traveling from one place to another, that by no reasonable exercise of diligence on his part could he have secured their presence on the day the case was tried, namely, the day after it was docketed.

223 F.—60

[3] Furthermore, during the progress of the trial, and after the government had completed its testimony, defendant's counsel informed the court that he had been trying all day over the phone to get two witnesses from Parkersburg, and that he believed he would be able to secure their presence in court next morning, and asked as a matter of fairness that the court prolong the trial until the next day for that purpose, which motion the court overruled.

Under the circumstances of this case, it seems to the court that this motion likewise should have been granted, and that it was prejudicial error not so to do. The defendant had been forced into trial over his protest, after he had filed an affidavit as to the materiality of his witnesses, the impossibility of securing them, the exercise of due diligence on his part to secure their attendance, and his inability to prove the facts by any other witnesses, they being witnesses the materiality of whose testimony, if as claimed by the defendant, was manifest. But little inconvenience would have been caused by the postponement of the trial until and completing it on the next day. The defendant should at least have had a chance to secure these two witnesses, as he had not had opportunity to procure the others.

For the reasons stated, the action of the lower court will be reversed, and a new trial awarded to the plaintiff in error.

Reversed.