Roger S. BANDY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16479.

United States Court of Appeals
Eighth Circuit.

Nov. 15, 1961.

Rehearing Denied Dec. 4, 1961.

Charles A. Seigel, St. Louis, Mo., for appellant.

John O. Garaas, U. S. Atty., Fargo, N. D., for appellee.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VOGEL, Circuit Judge.

On September 10, 1959, Roger S. Bandy, appellant herein, was convicted by a jury on all counts of a six-count indictment charging violations of 18 U.S.C.A. § 287 in that he unlawfully, under fictitious names, presented to the Treasury Department of the United States, through the District Director of Internal Revenue for North Dakota, fraudulent claims for refunds of income taxes. Bandy attempted to appeal from his conviction and sentence and asked leave to proceed *in forma pauperis*. The trial judge allowed him to file his notice of appeal without payment of costs but refused to allow him to proceed further *in forma pauperis*, certifying that the appeal was not taken in good faith. In Bandy v. United States, 8 Cir., 1959, 272 F.2d 705, this court appointed counsel to represent Bandy in relation to his motion. Therein we stated, at page 706:

"In the responsibility thus imposed of assisting appellant to make manifest the basis of his claim that the district judge was not warranted in certifying that the appeal was not taken in good faith, it is hoped that counsel may, with the cooperation of the United States Attorney, be able to work out an agreed statement, such as was suggested by us and effected in Weber v. United States, 8 Cir., 254 F.2d 713; Id., 8 Cir., 256 F. 2d 119, 120."

Counsel so appointed (on December 10, 1959) was Mr. Ralph B. Maxwell, of West Fargo, North Dakota, who had served as court-appointed counsel for appellant at the time of his trial before a jury in District Court. Subsequently, and on December 21, 1959, this court on its own motion appointed Mr. Francis J. Magill, of Fargo, North Dakota, to assist Mr. Maxwell in representing Bandy. Thereafter an agreed statement of the case was worked out through counsel, submitted and filed with this court. Based upon that agreed statement and the record and the briefs of counsel, this court in Bandy v. United States, 8 Cir., 1960, 278 F.2d 214, 216, held that the certificate of the trial judge was not arbitrary, unwarranted or erroneous and dismissed the appeal as frivolous.

On petition for writ of certiorari to the Supreme Court of the United States, it was discovered that an error had occurred in the "Agreed Statement of the Case" entered into by counsel, in that it was indicated in the agreed statement that at the arraignment of the appellant on August 12, 1959, at which time a plea of not guilty was entered as to all counts, the trial court had ordered that defense counsel could select and employ a handwriting expert of his own choice at government expense. The date was incorrect. In truth and in fact it was not until September 2, 1959, at a hearing on Bandy's motion for discovery and inspection of government documents, etc., that the trial court stated to Bandy's counsel that he would authorize the employment of a handwriting expert of Bandy's own selection at government expense "and an order will be made when one is selected". This was six days before trial, which had been set for September 8, 1959. On September 4, 1959, the trial court formally executed an order providing that counsel for Bandy could select and employ at the expense of the United States a handwriting expert of his own choice and directing the Marshal to pay the expense thereof. Based on this error in date and on other assertions of Bandy, the Supreme Court in Bandy v. United States, 1960, 364 U.S. 477, 81 S.Ct. 244, 5 L.Ed.2d 34, ordered

"The motion for leave to proceed *in forma pauperis* and the petition for writ of certiorari are granted. In light of the circumstances pointed out by the Government surrounding the alleged inability of the petitioner to secure the services of his own handwriting expert, the error which occurred in the 'Agreed Statement of the Case' and which was repeated by the Government in its brief and

the Court of Appeals in its opinion, the failure to subpoena witnesses with respect to petitioner's alibi, and the dispute which arose with respect to representation of petitioner by his appointed counsel on appeal, the judgment is vacated and the cause is remanded to the Court of Appeals for a hearing of the appeal."

We have proceeded with a hearing on the appeal and in connection therewith appointed Mr. Charles Alan Seigel of St. Louis, Missouri, to prosecute the matter in Bandy's behalf.

The case has been presented here on the original files, a complete transcript of the testimony taken during the trial and at the sentencing of the appellant, the briefs of counsel and oral arguments.

On this appeal there are presented and argued the following claimed errors:

1. The court having determined that it was necessary for appellant to have the services of a handwriting expert in order to properly conduct the defense of his case, and in the interest of justice, and appellant having been convicted solely on the opinion testimony of the government's handwriting expert, appellant was deprived of a fair trial and of due process of law by not being allowed sufficient time or opportunity by the court to retain the services of his own handwriting expert.

2. The court in denying appellant's request to subpoena witnesses to support his defense of alibi deprived appellant of a fair trial and of due process of law.

On June 2, 1959, Roger S. Bandy was arrested in New York City upon a complaint issued in North Dakota charging the filing of false and fraudulent claims for income tax refunds. At the time, Bandy was also being sought as a parole violator. On June 5, 1959, Bandy was taken before a United States Commissioner where he waived examination and bail was fixed at $10,000. On June 16, 1959, Bandy was taken before a United States District Court in Brooklyn, New York, and his removal to the District of North Dakota was ordered. He arrived in Fargo, North Dakota on July 11, 1959, and for want of bail was placed in the Cass County Jail. Bandy was an indigent defendant. On July 17, 1959, Ralph B. Maxwell, a former United States Attorney and former Assistant United States Attorney, was appointed to represent him. On July 31, 1959, a grand jury returned a six-count indictment, Count 1 of which charged that on or about January 14, 1959, Bandy, in violation of 18 U.S.C.A. § 287, had made and presented for payment to the District Director of Internal Revenue at Fargo a claim against the United States in the amount of $193.41, in the form of a fraudulent income tax return falsely claiming a refund when he knew that he was not entitled to such refund. The other five counts were substantially identical with Count 1 except as to amounts and dates. All of the offenses were alleged to have been committed in January, 1959. Arraignment was had on August 12, 1959, Bandy entering a plea of not guilty as to all counts. Bail was reduced to the amount of $7500. It was not furnished. At the time of arraignment counsel for Bandy moved for a prompt trial, whereupon the District Judge ordered a special jury term of court for the purpose of trying Bandy, directing that it commence on September 8, 1959, at Fargo, North Dakota.

On August 26, 1959, Mr. Maxwell filed in behalf of Bandy a motion for discovery and inspection, requesting access to and right to copy and photograph various records, documents and writings and specimens of Bandy's handwriting in the possession of the United States that would be used as a basis of expert testimony at the trial. The accompanying affidavit, executed by Bandy, expressed the belief that the government's case would be based on testimony of one or more handwriting experts and that he was

"* * * entirely destitute and without any funds whatsoever to employ handwriting experts of his own; that he will therefore have to rely entirely upon cross examination and impeachment of the govern-

ment's handwriting experts whose testimony will be adverse to him; that in order to adequately prepare for such cross examination it is essential and material that the Defendant know well in advance of trial, the handwriting specimens that will be used, the charts and diagrams that have been prepared to be used against him and the substance of any reports and conclusions of any handwriting experts and reasons therefor; that the lack of time to develop properly the course of cross examination of the said experts (which under defendants (sic) financial circumstances will have such immense importance in the defense of this case) will unfairly penalize Defendant and deprive him of a fair trial; * * *."

No request was made under Rule 17(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., or otherwise for a handwriting expert at government expense. No request was made to subpoena any other witnesses.

At the hearing on Bandy's motion for discovery and inspection on September 2, 1959, the trial court inquired of Mr. Maxwell in the presence of the appellant Bandy

"* * * whether he considered the assistance of a handwriting expert essential to the defense of the Defendant, to which said Counsel replied in the affirmative, but stated the Defendant had no funds with which to amploy (sic) such an expert."

The trial court thereupon advised Mr. Maxwell and appellant that he would authorize the employment of a handwriting expert of the appellant's own selection at government expense. A formal order to such effect was entered on Friday, September 4, 1959. At this point it should be noted that the trial court's unsolicited offer to allow the employment of a handwriting expert at government expense was made on Wednesday morning, September 2, 1959, that the trial had been set (early at the request of the appel-

lant) on the following Tuesday, September 8th, which was the day after Labor Day.

Trial was commenced on the morning of September 8, 1959. The local District Director of Internal Revenue identified the six tax returns in question and testified that a check had been issued to each of the persons named in the returns and mailed to the addresses there shown; that in each case check was returned to the Fargo, North Dakota office unclaimed. The government then introduced four writings identified as those of the appellant, Government's Exhibits 7 through 10, and called a handwriting expert, Clarence E. Bohn, who testified that in his opinion the four writings and the longhand portions of the six tax returns, Government's Exhibits 1 through 6, had all been written by the same person. After the cross examination of witness Bohn the government rested.

Defense counsel waived his opening statement and called as his first witness the local District Director of Internal Revenue, who had previously testified for the government. He stated that the envelopes in which Government's Exhibits 1 through 6 (the tax returns) had been received were destroyed and they did not know from what area the envelopes had been mailed. Thereupon, the defense offered in evidence letters, Exhibits 13, 14, 15, 16, 17 and 18, from former employers of Bandy in the New York City area. The purpose was to show that he lived and worked there at the time of the filing of the false returns in North Dakota and that he was there continuously thereafter up to the time of his arrest on June 2, 1959. Government's objections to the exhibits were sustained, whereupon Attorney Maxwell requested a recess so that an opportunity could be had to subpoena at government expense the six witnesses, all from the New York City area, to establish the whereabouts of Bandy during the times the returns were filed in North Dakota. The court thereupon stated:

"Well, I will tell you I honestly think at this state of the trial it is

an unreasonable request for the defendant to make because he has long been aware that this case has been coming up, and if this request had been made earlier and certainly if I thought it were material, I would direct subpoenas to be issued and the people you speak of brought here at Government expense; but I am not at all satisfied as to what possible materiality it could make in the present state of the record.

"Of course, as Mr. Maxwell says, counsel is managing his own lawsuit, I understand that, but this is a request I think the defendant should have made earlier."

At this point Bandy himself asked permission to be heard and stated:

"These defendants—witnesses for the defense would have been called, it was my understanding, provided I got on the stand—through the District Attorney—I got on the stand, he would accept these. Well, the fact is, I said I didn't know whether I would get on the stand or not; and I have stipulated all along that I would request these people if necessary to come and testify in my defense, and it has been known in the court circles and the District Attorney let me know that he would accept them providing that I would appear as a witness against myself.

"The Court: Mr. Bandy, do you recall, were you in court the last time the Court offered you the use of an expert of your own choosing at the expense of the Government?

"Defendant Bandy: Yes, your Honor.

"The Court: That wasn't given at your own request, was it?

"Defendant Bandy: No, sir.

"The Court: If you had wanted subpoenas issued at that time you know perfectly well you would have gotten them?

"Defendant Bandy: Yes, sir.

"The Court: Why didn't you make the request at that time?

"Defendant Bandy: Because I was not informed of these facts where it would be denied to me later on.

"The Court: What facts would be denied to you?

"Defendant Bandy: Wanted to be a witness against myself, that these ———

"The Court: (Interrupting) Mr. Bandy, whether you decide to testify or not is entirely a matter of your personal choice. It isn't even a matter which the Government can be permitted to comment on, nor can the jury take it into consideration in any way, shape or form. You have the right to not take the stand if you choose not to take it.

"Defendant Bandy: Your Honor, my understanding, you asked why we failed to produce these witnesses previously or ask the Court there to produce them at Government expense. I am explaining the reason why we have failed to, because it was through the understanding that the District Attorney made it available to me, that providing—or condition providing that—let me testify against myself, those would be accepted.

"The Court: Well, of course, I don't know what understandings were made between defense counsel and attorneys for the Government or between you and the attorneys for the Government. Apparently you don't care to disclose that?

"Mr. Vogel: [United States Attorney] I don't mind commenting on it, your Honor. What he says is substantially true. One condition I made was if Mr. Bandy got on the stand and testified he was in those places at those times, I would stipulate that the people named in those letters would so testify, if called; but I said I would not accept that and I would not stipulate to those things as a substitute for Mr. Bandy's testimony.

"The Court: Is that correct, substantially?

"Defendant Bandy: It is correct as I did not make it understood whether or not I would testify.

"Mr. Vogel: I didn't ask you to. I merely stated my position.

"The Court: What the United States Attorney says, if the Court understands, he would and he would yet agree that the contents of these exhibits that have been marked for identification as 13, 14, 15, 16, 17 and 18 would be admitted provided you would take the stand and testify if you know anything about it.

"Mr. Maxwell: That's correct.

"Mr. Vogel: That is a concession I need not have made at all, as a matter of fact.

"Defendant Bandy: It was our understanding on that particular concession, that through conference with my attorney I informed him all along that the facts leading up to and the developments during the trial up to the time that the prosecution rested their case, that would have a great bearing upon whether or not I would testify, and they were asking me to testify something, the facts I don't even know—don't even exist.

"Mr. Vogel: Your Honor, I made no request to the defendant to testify. I merely stated what I would do if he testified and what I would do if he did not testify so far as these exhibits were concerned. I haven't asked and don't intend to ask him to testify or not to testify."

Bandy's motion for a recess and the subpoenaing of the six witnesses from New York was denied because belatedly made and also because the testimony the witnesses would offer was irrelevant and immaterial. Bandy's presence in North Dakota at the time of the mailing of the false claims was held not to be essential. The postal addresses used could have been obtained, and the claims for refund could have been mailed, from

New York City or anywhere else he happened to be.

At the trial the defendant did not call a handwriting expert of his own, and he did not testify in his own behalf.

The jury found the appellant guilty on all six counts.

After the trial and conviction and during the argument on Bandy's motion for a new trial, the following occurred:

"The Court: Mr. Maxwell, may I interrupt you just a moment? Would you care to indicate why you did not accept the Court's offer to provide an expert handwriting man at the expense of the Government?

"Mr. Maxwell: We didn't have time to accept that offer, your Honor. There are no handwriting experts in this immediate area. The closest I know of is in Minneapolis.

"The Court: Was any effort made to secure one?

"Mr. Maxwell: The time element was such that it didn't appear that there would be any point in trying to. Now, the Court stated that the trial would go on according to schedule regardless of the fact that the Court agreed that we could have one and the Government would pay for it.

"The Court: Pardon me, Mr. Maxwell. What I wanted to make clear was the Court offered this handwriting expert, the defendant did not ask for it.

"Mr. Maxwell: Yes, your Honor, I understand that."

We consider first the claim that Bandy was deprived of a fair trial and of due process of law by not being allowed sufficient time or opportunity to retain the services of his own handwriting expert. The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *; to have compulsory process for obtaining Witnesses

in his favor, and to have the Assistance of Counsel for his defence."

Implementation thereof is found in Rule 17(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.:

"*Indigent Defendants.* The court or a judge thereof may order at any time that a subpoena be issued upon motion or request of an indigent defendant. The motion or request shall be supported by affidavit in which the defendant shall state the name and address of each witness and the testimony which he is expected by the defendant to give if subpoenaed, and shall show that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness and that the defendant does not have sufficient means and is actually unable to pay the fees of the witness. If the court or judge orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

Counsel for the appellant has cited to us cases which he believes are supportive of appellant's contention that he was deprived of his rights thereby granted. We have considered them all. We agree with United States v. Fox, D.C.S.D.N.Y., 1937, 19 F.Supp. 463, that handwriting experts are included under Rule 17(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. Had Bandy employed a handwriting expert, his services would have been paid for in accordance with the order of the District Court.

Bridwell v. Aderhold, D.C.N.D.Ga., 1935, 13 F.Supp. 253, affirmed Johnson v. Zerbst, 5 Cir., 1937, 92 F.2d 748, certiorari granted, 303 U.S. 629, 58 S.Ct. 610, 82 L.Ed. 1089, reversed Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, is entirely concerned with whether or not the petitioners competently and intelligently waived their right to counsel and whether or not habeas corpus was an available remedy under the circumstances. There are no parallels here.

Young Bark Yau v. United States, 9 Cir., 1929, 33 F.2d 236, concerned a deportation proceeding, in which appellant's application for a *dedimus protestatem* to take the testimony of witnesses in China was denied. The application stated that absolutely unavoidable circumstances made it impossible for the appellant to establish his citizenship excepting by the testimony of witnesses who were then in China. The names and residences of the witnesses were set forth. That to which they would testify was alleged. The showing was in no wise controverted by the government. The government merely interposed a demurrer to the application, thus admitting the facts contained therein. In reversing, the court stated, at page 237:

"* * * An American citizen, threatened with deportation because of alienage, has at least as much right to take depositions to establish his status as has any other litigant in a court of justice where civil rights are involved, and we are constrained to hold that the court below abused its discretion, and that the refusal to grant the application was prejudicial error."

We find no parallels there with the instant case.

The only other case cited by appellant that warrants discussion is Paoni v. United States, 3 Cir., 1922, 281 F. 801. There the sole question was

"* * * whether the trial court abused its discretion in refusing the motion of the defendants' counsel for a continuance on the single ground of insufficient time within which to procure the attendance of witnesses by process of subpoena." 281 F. at 803.

There two defendants, with others, were indicted on June 6, 1921, for violations of the Harrison Anti-Narcotic Act, 26

U.S.C.A. § 4701 et seq. There was testimony that on June 16th notice was mailed to counsel for defendants that the case would come up for trial on June 22nd. On the morning of that day the case was called. The defendants were present but their counsel was absent. The jury was drawn and sworn and the case continued until the afternoon to give defendants an opportunity to find their counsel and procure the attendance of witnesses. Counsel appeared in the afternoon and requested a continuance in order to procure witnesses, which motion was denied. The defendants were forthwith tried and convicted. A motion for a new trial was made, based, *inter alia*, on the grounds that defendants had not been afforded a fair trial inasmuch as neither they nor their counsel had been advised of the trial in time to prepare their defense or to obtain subpoenas to procure the attendance of witnesses. In reversing and ordering a new trial, the Circuit Court stated:

"Under the Sixth Amendment to the *Constitution* the defendants were entitled to have the assistance of counsel for their defense and also to have compulsory process for obtaining witnesses in their favor. To one accused of crime these are very substantial rights. Yet they are barren if given at a time when assistance by counsel in issuing subpoenas is impracticable and when service of subpoenas and the appearance of witnesses is impossible. Have these rights been withheld from the defendants in this case? That depends upon whether the trial court abused its discretion in denying their motion for a continuance. The law governing federal courts on applications of this kind is well settled. It is that such motions are addressed to the discretion of the trial court, and its action is not subject to review, unless it be clearly shown that the exercise of such discretion was abused. Isaacs v. United States, 159 U.S. 487, 489, 16 Sup. Ct. 51, 40 L.Ed. 229, Myers v. United States, 223 Fed. 919, 139 C.C.A. 399; Younge v. United States, 223 Fed. 941, 139 C.C.A. 421." 281 F. at 803, 804.

The principles enunciated are not in dispute. From the record in Paoni it would seem clear that the trial court had abused its discretion in failing to grant the continuance, and, accordingly, a new trial was entirely justified.

But Paoni is distinguishable from the case at bar. There the defendants *had* witnesses who would testify. Here there is a positive showing that the appellant had made no effort to secure the services of a handwriting expert. In Paoni, the issue was raised as to whether notice as to the date of trial had been actually given in time for the defendants to procure their witnesses. Here, there is no dispute that both the appellant and his counsel had been given due notice as to the date of trial, and, in fact, had made a motion for an early trial which the trial court granted. In Paoni a request for a continuance was made. Here, the record is bare of any such request. The only similarity in issues between the cases is in whether there was ample time *to prepare* a defense. In answer to that contention in Paoni the court stated:

" * * * Obviously there is nothing in this, for counsel had from April 11 to June 22 in which to prepare for trial and had actually prepared for trial by finding two witnesses, who, had they been summoned, would have appeared and testified." 281 F. at 803.

Here, too, there was ample time (from July 17th until September 8th) to prepare for trial. During that time some effort could have and should have been made to obtain the services of a handwriting expert had one been desired. No attempt was made to comply with Rule 17(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., which provides. among other things, that a motion or request for a compulsory witness should be supported by an affidavit stating the name and address of the witness and the testi-

mony which he is expected to give and the materiality of such testimony.

Nevertheless, appellant here contends that his failure to obtain the handwriting expert was because he was not informed until September 2nd that such would be available, and that the formal order granting him permission was not made until September 4th. He states that a request for continuance would have been to no avail because the court stated that the trial would commence as scheduled on September 8, the day following the Labor Day week-end. In short, the contention is that Bandy had no opportunity to secure the witness he desired.

The record rebuts appellant's contention. Mr. Maxwell was appointed by the court on July 17, 1959, almost two months before the date of trial. This court takes notice that Mr. Maxwell is an able, experienced and conscientious attorney. For a time he was United States Attorney for the District of North Dakota. For several years prior thereto he had been an Assistant United States Attorney. Subsequent to his service as United States prosecutor he has been engaged in the trial of both criminal and civil cases. To suggest that Mr. Maxwell did not know Bandy's rights is to ignore his training and his years of experience. To suggest that he purposely waived these rights to Bandy's detriment is to refute a well-earned reputation as a conscientious practitioner before this and other courts.

Bandy himself is no neophyte when it comes to criminal law. In 1956, in California, he entered pleas of guilty to charges of filing false claims for income tax refunds similar to the charges for which he was tried herein. On his plea of guilty he was sentenced to five years, subsequently reduced to three years. On April 28, 1958, he was placed on parole and went to Decatur, Illinois. At the time of his arrest in New York he was wanted as a parole violator, having left Decatur without permission and having failed to contact his parole officer during a period of eleven months subsequent to his release.

With reference to this conviction on pleas of guilty in 1956, Bandy was questioned by the court at the time sentence was imposed herein.

"The Court: How did you conceive this scheme to file these false claims for tax refunds, Mr. Bandy?

"Defendant Bandy: Through my work with the Navy, sir, disbursing clerk.

"The Court: Do you have any idea, could you give me a rough idea how many false claims for tax refunds you have made?

"Defendant Bandy: I have made exactly the 22 returns that I had made there on the prior conviction."

During the pendency of the original appeal in this court Bandy personally filed an affidavit of poverty and a motion setting forth some 44 claimed errors in the trial of his case. Eighteen of them had to do with his disagreement with his court-appointed counsel as to the manner in which his case should have been tried. Herein he also submitted a "Reply Brief of Appellant Pro Se". Seemingly Bandy is neither inexperienced nor lacking in intelligence or ability.

As to opportunity to secure an expert, both Bandy and his counsel knew from the very beginning that the government would have to rely upon the testimony of handwriting experts to establish that Bandy wrote the alleged claims for refund. On August 26, 1959, Bandy, through his counsel, filed an elaborate and detailed motion for discovery and inspection supported by a detailed affidavit by Bandy asking access to specimens of Bandy's handwriting that were in the possession of the government. At that time they made no request for a handwriting expert of their own. There are no grounds for the assumption that this was because the thought had not occurred to Bandy or his counsel or because they did not think such a request would be granted and there was, of course, ample time to secure an expert had one been desired.

On September 2, 1959, at the hearing on the discovery motion made August 26th, the trial judge, apparently wondering why the assistance of a handwriting expert had not been requested, made inquiry himself and informed Bandy and his counsel that he would authorize the employment of such expert at government expense. The trial had been set for September 8th at a special term of court called for the specific purpose of trying Bandy *pursuant to Bandy's request for an early trial.* After trial and Bandy's conviction and during a hearing on Bandy's motion for a new trial, the trial judge, apparently curious as to why a handwriting expert had not been called, made inquiry. He was told by counsel that:

"We didn't have time to accept that offer, your Honor. There are no handwriting experts in this immediate area. The closest I know of is in Minneapolis."

Minneapolis is approximately 250 miles from Fargo. Telephone and transportation facilities of every kind are readily available. No effort of any kind was made to obtain a handwriting expert, although when the trial judge had made the offer there remained six days before trial. Additionally, no request for delay was presented, although Bandy and his counsel had no hesitancy, in the middle of the jury trial which followed, in asking for a recess so that they could subpoena six witnesses who resided in New York, some 1200 to 1500 miles away. In light of all the circumstances, it becomes obvious that the trial judge's questions with regard to whether the appellant wanted a handwriting expert and later as to why such expert was not used could call only for non-damaging answers. To disclaim any intent or desire of using a handwriting expert in answer to either query would have amounted to admitting that such expert would be or would have been of no value to the defense. At the time of the trial court's last inquiry, Bandy was asking for a new trial. These circumstances plus the fact that in his motion for new trial this point was not mentioned or listed among the 12 assignments of error lead us to what we consider the only reasonable inference: That the error here charged was no more than an after-thought. It seems obvious that there was no desire for a handwriting expert and certainly no valid effort was ever made to obtain one, although sufficient time and opportunity were afforded.

■ Bandy's next claim of error is in the denial of his request for a recess and to subpoena witnesses in support of an alibi defense. The case was being tried in Fargo, North Dakota. The six witnesses whom the appellant wanted to subpoena resided in the State of New York. Bandy's request for continuance and the right to subpoena the witnesses at government expense was made after the government had rested and the defense had opened its case. It should be remembered that the nature of the charges herein and the manner in which the government would be forced to establish its case had been fully clear to Bandy and his counsel long before trial. Nothing came as a surprise.

After the close of the government's case, appellant called the District Director of Internal Revenue for the District of North Dakota and through him established that the envelopes which had contained the fraudulent claims for refund had been destroyed and, accordingly, there was no way of ascertaining the place from which the applications for refund had been mailed. Apparently this was done with the idea that thereby there was created a presumption that the fraudulent claims had been mailed in North Dakota. Counsel for Bandy then offered in evidence six letters from former employers of Bandy, from which he apparently hoped to establish that Bandy was in the vicinity of New York City in January 1959 when the fraudulent claims for refund were received in North Dakota. The letters had previously been discussed by Bandy and his counsel with the United States Attorney. The latter had agreed that if Bandy would take the stand and testify that he was in the plac-

es indicated in the letters at such times, that he would stipulate that the people who wrote the letters would so testify if they had been called. Bandy did not testify in his own behalf and, accordingly, the United States Attorney objected to the introduction of the letters and refused to stipulate that the writers thereof would testify in accordance with the contents if they had been called. We think under the circumstances that sustaining the objection to the letters was entirely proper and the refusal to grant the motion for recess or continuance not an abuse of discretion. First, there was an utter failure of foundation for the introduction of the six letters. Secondly, under Rule 17(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., certain requirements must be met before the court will order the subpoenaing of witnesses at the expense of the government. One such requirement is "that the evidence of the witness is material to the defense, that the defendant cannot safely go to trial without the witness * * *." By showing that the envelopes had been destroyed and that the government therefore was unable to show the place or places from which false claims had been mailed, Bandy had apparently hoped to create the presumption that the claims had been mailed in North Dakota. His plan was, to a degree, self-defeating. By showing that there was no way of proving where the claims had been mailed from, evidence by way of alibi that Bandy was in New York State became immaterial. What difference did it make whether Bandy was in New York State or elsewhere as long as it was impossible to establish where the claims had been mailed from? There is argument that Bandy or whoever mailed the false claims, for that matter, would have had greater access to telephone directories, etc., in order to obtain accurate addresses if present in North Dakota; but that is not to say that directories and addresses therefrom could not have been obtained elsewhere. We accordingly believe that the so-called alibi defense whereby Bandy sought to establish that during the time of the filing of the claims he was in the vicinity of New York City became immaterial and that the trial judge was entirely correct in so holding.

Additionally, the motion for recess or continuance during the jury trial in order to subpoena witnesses from New York City to establish an immaterial matter came entirely too late. Reasonable diligence, even if the testimony of the so-called alibi witnesses could have been found to be material, was not satisfied.

Judge Gardner, speaking for this court in Gibson v. United States, 8 Cir., 1931, 53 F.2d 721, 722, certiorari denied, 285 U.S. 557, 52 S.Ct. 458, 76 L.Ed. 946, said:

"It appears from the record that defendant had known for several months at least of the whereabouts of this witness. He also knew that his case was assigned for trial at the January, 1931, term, but he made no effort to present his application for a writ until the day the case was set for trial. This was not timely."

Again in dealing with a similar question, Judge Woodrough in Reistroffer v. United States, 8 Cir., 1958, 258 F.2d 379, 396, certiorari denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301, rehearing denied, 361 U.S. 856, 80 S.Ct. 42, 4 L.Ed. 2d 96, stated:

"It is well settled that Rule 17(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., under which the motion for subpoena was made, does not accord the indigent defendant an absolute right to subpoena witnesses at government expense. There is and must be wide discretion vested in the District Court to prevent the abuses often attempted by defendants. This Court will not disturb the exercise of the discretion unless exceptional circumstances compel it."

We find no error and no abuse of discretion on the part of the trial court in denying a recess under the circumstances existing here.

Reference has been made to Bandy's *pro se* motion setting forth some 44 claimed errors in the trial of his case. In addition to the two briefs filed by his appointed counsel in the instant hearing, Bandy has also filed a "Reply Brief of Appellant Pro Se". We have examined all of such claims and have considered the reply brief and find them to be without merit.

At this time we express to Mr. Charles Alan Seigel of St. Louis, Missouri, appreciation for his diligent efforts in behalf of the appellant and his assistance to this court in the presentation of this appeal.

Affirmed.